**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2013**

EDDY ETIENNE, a/k/a Hailadingle, Zellew Tesfegna, a/k/a
Eddy Etienn,

          Petitioner,

     v.

LORETTA E. LYNCH, Attorney General,

          Respondent.

----------------------------------

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION; NATIONAL
IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD,

          Amici Supporting Petitioner.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued: October 27, 2015        Decided: December 30, 2015

Before TRAXLER, Chief Judge, and WILKINSON and DUNCAN, Circuit
Judges.

Petition denied by published opinion. Judge Duncan wrote the
opinion, in which Chief Judge Traxler and Judge Wilkinson
joined.

**ARGUED:** Kwaku Affawua Akowuah, SIDLEY AUSTIN LLP, Washington,
D.C., for Petitioner. M. Jocelyn Lopez Wright, UNITED STATES

DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Quin M. Sorenson, Frances E. Faircloth, Christopher A. Eiswerth, SIDLEY AUSTIN LLP, Washington, D.C., for Petitioner. Benjamin C. Mizer, Acting Assistant Attorney General, Civil Division, Leslie McKay, Assistant Director, Melissa Lott, Trial Attorney, Stefanie Notarino Hennes, Trial Attorney, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Morgan Macdonald, Heidi Altman, Claudia Cubas, CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, Washington, D.C.; Sejal Zota, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, for Amici Curiae.

_____

DUNCAN, Circuit Judge:

After expedited proceedings authorized by the Immigration and Nationality Act ("INA"), the Department of Homeland Security ("DHS") ordered petitioner Eddy Etienne's removal, on the grounds that he is an alien who has been convicted of an "aggravated felony." See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1228(b).

For the reasons that follow, we conclude that we have jurisdiction to hear Etienne's petition for review but that his argument that his conviction does not constitute an "aggravated felony" is without merit. Accordingly, we deny the petition for review.

I.

Etienne entered the United States from his native country of Haiti in 1984, initially residing here as an undocumented immigrant. In 1996, Etienne pleaded guilty to the crime of conspiracy "to violate the controlled dangerous substances law of the State of Maryland." See A.R.1 at 17. After his release from state prison, Etienne continued to reside in the United States without documentation.

Following an earthquake in Haiti in 2010, Etienne applied for Temporary Protected Status ("TPS"), a lawful immigration status, based on the potential risk of harm if he were to return

to Haiti. DHS granted not only Etienne's initial application for TPS, but also his application for renewal the following year. When Etienne sought another renewal of his TPS in February of 2014, however, DHS rejected his application.

Shortly thereafter, DHS initiated expedited removal proceedings against Etienne by serving him with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). The Notice of Intent, part of DHS Form I-851, informed Etienne that he was charged with being deportable under the INA for being an alien convicted of an "aggravated felony"-- his 1996 Maryland conspiracy conviction. The Notice of Intent also informed Etienne that he would be removed pursuant to expedited procedures, without the benefit of a hearing in front of an immigration judge ("IJ"). Finally, the Notice of Intent indicated that Etienne had ten calendar days to respond to the charges against him by filling out the response section of Form I-851 and returning it to DHS. He responded the same day.

Etienne checked two boxes indicating that he wished to contest his removal and that he was "attaching documents in support of [his] rebuttal and request for further review." A.R.1 at 2. Etienne did not, however, actually attach any documents to the Notice of Intent before returning it to DHS. Of particular relevance here, Etienne did not indicate in any

4

manner that he believed his 1996 Maryland conspiracy conviction did not constitute an "aggravated felony."

On March 20, 2014, after concluding that Etienne was deportable under the INA, the deciding DHS officer issued a Final Administrative Removal Order for Etienne's removal to Haiti. Upon Etienne's request, an asylum officer held a hearing and determined that Etienne did not qualify for withholding of removal. An IJ affirmed the asylum officer's determination, and Etienne's removal proceedings reached administrative closure. Etienne then turned to this court, timely filing this petition for review.[1]

## II.

In his petition for review, Etienne argues for the first time that his 1996 conviction for conspiracy under Maryland law does not constitute an "aggravated felony" under the INA, and that DHS therefore erred in finding him removable. Before addressing Etienne's petition on the merits, however, we must determine whether Etienne's failure to raise this argument in the DHS administrative proceedings deprives us of jurisdiction.

---

[1] In early October of 2014, DHS officials began preparations to remove Etienne to Haiti. In response, on October 14, 2014, Etienne filed an emergency stay of removal. On October 20, 2014, this court granted the motion. Etienne remains in DHS custody, where he has been since March 6, 2014, the day he was served with the Notice of Intent.

The jurisdictional issue and the merits issue are questions of law, which we consider de novo. See Omargharib v. Holder, 775 F.3d 192, 196 (4th Cir. 2014); Kporlor v. Holder, 597 F.3d 222, 225 (4th Cir. 2010).

## A.

We first consider whether we have jurisdiction over Etienne's petition for review. A court may review a final order of removal against an alien only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). When an alien has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim. See Massis v. Mukasey, 549 F.3d 631, 638 (4th Cir. 2008).

Here, Etienne argues that DHS's expedited removal procedures allow aliens to contest only the factual basis for their removal, and not to raise legal arguments. Thus, Etienne contends, he had no opportunity during administrative removal to challenge the classification of his 1996 Maryland conspiracy conviction as an "aggravated felony," and therefore he has not failed to exhaust his administrative remedies.

The question of whether DHS's expedited removal procedures provide an alien with the opportunity to challenge the legal basis of his or her removal--and thus whether we have

6

jurisdiction to hear such a challenge when a petitioner fails to raise it before DHS--is one that has split our sister circuits. Compare Malu v. U.S. Atty. Gen., 764 F.3d 1282, 1288 (11th Cir. 2014) (no jurisdiction), with Valdiviez-Hernandez v. Holder, 739 F.3d 184, 187 (5th Cir. 2013) (per curiam) (jurisdiction lies).[2] As we explain below, we join the Fifth Circuit in holding that, in expedited removal proceedings, an alien has no opportunity to challenge the legal basis of his removal. The INA's administrative-exhaustion requirement therefore does not deprive us of jurisdiction to consider such a challenge in the first instance on appeal.

1.

The INA declares that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Generally, when an alien is charged with removability for having been convicted of an "aggravated felony," the INA requires that the alien be afforded a hearing before an IJ, where the alien may contest the factual

---

[2] Other circuits have also considered administrative exhaustion in the context of expedited removal more generally. See Aguilar-Aguilar v. Napolitano, 700 F.3d 1238, 1243 (10th Cir. 2012) (jurisdiction lies); Escoto-Castillo v. Napolitano, 658 F.3d 864, 866 (8th Cir. 2011) (no jurisdiction). The Seventh Circuit has arguably come out on both sides of the issue. Compare Eke v. Mukasey, 512 F.3d 372 (7th Cir. 2008) (jurisdiction lies), with Fonseca-Sanchez v. Gonzales, 484 F.3d 439 (7th Cir. 2007) (no jurisdiction).

or legal basis of his removability. See 8 U.S.C. §§ 1229, 1229a; 8 C.F.R. § 1240.10(c). But for aliens like Etienne who have not been lawfully admitted to the United States for permanent residence, the INA authorizes an expedited removal process, without a hearing before an IJ. See 8 U.S.C. § 1228(b). Instead, a DHS officer, who need not be an attorney, presides over this expedited removal process. See 8 C.F.R. § 238.1(a).

Under the relevant regulations, DHS initiates an expedited removal by serving an alien with "Form I-851, Notice of Intent to Issue a Final Administrative Deportation Order." See id. § 238.1(b)(1). The contents of the Notice of Intent are spelled out in the regulations: It must notify the alien of the allegations of fact and conclusions of law underlying DHS's preliminary determination that the alien is removable, and it must inform the alien of DHS's intent to issue a Final Administrative Removal Order without a hearing before an IJ. Id. § 238.1(b)(2)(i). The Notice of Intent must also inform the alien, among other things, that he or she "may rebut the charges within 10 calendar days of service." Id.

Once DHS has served an alien with the Notice of Intent, using standardized Form I-851, the alien must choose whether to file a response. Form I-851 itself guides the alien's response process through a series of checkboxes on the back of the form.

8

Etienne's completed Form I-851 shows the range of possible responses:

☑ **I Wish to Contest and/or to Request Withholding of Removal**

☑ I contest my deportability because: *(Attach any supporting documentation)*

   ☐ I am a citizen or national off the United States.
   ☐ I am a lawful permanent resident of the United States.
   ☐ I was not convicted of the criminal offense described in allegation number 6 above.
   ☑ I am attaching documents in support of my rebuttal and request for further review.

☐ I request withholding or deferral of removal to _____[Name of Country or Countries]:

   ☐ Under section 241(b)(3) of the Act, 8 U.S.C. 1231(b)(3), because I fear persecution on account of my race, religion, nationality, membership in a particular social group, or political opinion in that country or those countries.
   ☐ Under the Convention Against Torture, because I fear torture in that country or those countries.

_E. Etienne_    _EDDY ETIENNE_    _03/06/14_
(Signature of Respondent)   (Printed Name of Respondent)   (Date and Time)

☐ **I Do Not Wish to Contest and/or to Request Withholding of Removal**

☐ I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to

_____

☐ I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right.

_____   _____   _____
(Signature of Respondent)   (Printed Name of Respondent)   (Date and Time)

_____   _____   _____
(Signature of Witness)   (Printed Name of Witness)   (Date and Time)

A.R.1 at 2.

If the alien chooses to respond, the first choice the alien must make is between two mutually exclusive boxes centered on the response form. The first allows the alien to indicate that he or she "[w]ish[es] to [c]ontest and/or to [r]equest [w]ithholding of [r]emoval." Id. The second indicates the opposite: that the alien "[d]o[es] [n]ot [w]ish to [c]ontest and/or to [r]equest [w]ithholding of [r]emoval." Id.

If the alien checks the first box, there are two additional check-box options that clarify whether the alien wishes to contest deportability, request withholding of removal, or both.

9

If the alien wishes to contest deportability, he or she must check the box that states "I contest my deportability because: *(Attach any supporting documentation)*." Id. Indented beneath that checkbox are four more checkboxes, only three of which logically complete the statement. Those three options each present a specific factual challenge to the basis of expedited removal: "I am a citizen or national of the United States"; "I am a lawful permanent resident of the United States"; and "I was not convicted of the criminal offense described . . . above." Id. The fourth checkbox, found directly below and aligned with the three factual challenges, reads "I am attaching documents in support of my rebuttal and request for further review." Id. The form does not offer a specific checkbox for an alien who wishes to raise a legal challenge to his or her removal.

If the alien responds and contests removability, the deciding DHS officer must determine whether the alien's deportability is nonetheless established by "clear, convincing, and unequivocal evidence." 8 C.F.R. § 238.1(d)(2)(i). If so, the officer must issue a final Removal Order. Id. If, however, "the deciding Service officer finds that the record of proceeding, including the alien's timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings," the DHS officer may either (1) "obtain additional evidence from any source, including the alien" or (2) initiate

10

full removal proceedings before an IJ.  Id. § 238.1(d)(2)(ii)(A).  If the additional evidence cures any "genuine issue of material fact," and if the officer concludes removability by "clear, convincing, and unequivocal evidence," the officer must then issue a final Removal Order.  Id. § 238.1(d)(2)(ii)(B).  But if the officer "finds that the alien is not amenable" to expedited removal, the officer "shall terminate the expedited proceedings . . . and shall, where appropriate," initiate full removal proceedings before an IJ. Id. § 238.1(d)(2)(iii).

## 2.

The parties' dispute here turns on their interpretation of 8 C.F.R. § 238.1(d)(2)(iii), which requires the deciding DHS officer to terminate expedited proceedings if the alien is "not amenable" to expedited removal and to refer the matter to an IJ "where appropriate."  According to the government, this provision authorizes a DHS officer presiding over an expedited removal proceeding to consider an alien's legal challenge to removability, and therefore obligates the alien to raise any such challenge before DHS or forfeit that claim for failing to exhaust administrative remedies.  Etienne, on the other hand, contends that this provision refers only to the possibility that the DHS officer may be unable to establish the factual basis for an alien's removability by "clear, convincing, and unequivocal

11

evidence," leaving the alien "not amenable" to expedited removal, but potentially amenable to removal under full proceedings before an IJ, which require a lower factual burden of proof.

Etienne's approach finds support in Valdiviez-Hernandez v. Holder, 739 F.3d 184 (5th Cir. 2013) (per curiam). Considering the same issue, the Fifth Circuit held that "the relevant statutes and corresponding regulations . . . did not provide [the alien] with an avenue to challenge the legal conclusion that he does not meet the definition of an alien subject to expedited removal." Id. at 187. Even though the Fifth Circuit acknowledged that the Notice of Intent "included conclusions of law," the court reasoned that "the response process is geared toward resolving only issues of fact." Id.

The government instead points to Malu v. U.S. Atty. Gen., 764 F.3d 1282 (11th Cir. 2014). In Malu, the Eleventh Circuit recognized that the relevant regulations require the notice to the alien "to include both 'allegations of fact and conclusions of law' that the alien may rebut" and reasoned that it would be "nonsensical to limit the alien's rebuttal to allegations of fact." Id. at 1288 (quoting 8 C.F.R. § 238.1(b)(2)(i)). Thus, the court held that "an alien must exhaust all administrative remedies by rebutting the charges--including the conclusion of

12

law that she is an aggravated felon--before the Department."
Id.

We conclude that the Fifth Circuit's approach, advanced by Etienne, is more consistent with the language and structure of the expedited removal regulations. Crucially, such a reading is more consistent with Form I-851, the form DHS must provide to aliens in expedited proceedings for aliens to respond to the charge of removability.

First, the language of the expedited removal regulations, read in context with the INA and associated regulations, seems to indicate that only factual challenges to an alien's removability may be raised in expedited removal proceedings. The procedures that are explicitly available to the deciding DHS officer after an alien responds to the Notice of Intent contemplate a "genuine issue of material fact" that the officer may attempt to cure by gathering additional evidence. 8 C.F.R. § 238.1(d)(2). If the additional evidence enables the officer to conclude deportability by "clear, convincing, and unequivocal evidence," he must then issue a final Removal Order. See id. Of course, all of these potential challenges are to be raised to the presiding DHS officer, who, significantly, is not required to be an attorney or have any specialized legal training.

It is true that 8 C.F.R. § 238.1(d)(2)(iii) requires an officer to transfer proceedings to an IJ "where appropriate,"

13

but this provision might merely refer to a scenario where a "genuine issue of material fact" cannot be cured by the DHS officer's fact-finding. The deciding DHS officer could not then unequivocally find that the alien is removable. An IJ, however, might still be able to conclude the alien is removable, under a lower standard of proof, after holding a hearing to resolve the factual dispute. When an IJ orders removal after holding a hearing, the evidence must still be "clear and convincing," but it need not be "unequivocal." Compare id. § 238.1(d)(2), with 8 U.S.C. § 1229a(c)(3)(A).

Second, Form I-851 offers no obvious opportunity to raise a legal challenge. "[E]xhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (first emphasis added) (citation omitted). Here, Form I-851 "holds out" the steps individuals in expedited removal proceedings may follow to respond to DHS's allegations, and those steps do not include an option to contest legal determinations. Form I-851 contains several checkboxes for an alien to lodge factual challenges to his or her removal. But it offers no checkbox for lodging any specific legal challenges, a legal challenge in general, or other unenumerated challenges.

The fact that Form I-851 has a checkbox that reads "I am attaching documents in support of my rebuttal and request for

14

further review" does not, as the government argues, create a procedure for aliens to raise any other challenges, including legal challenges. In fact, "my rebuttal" appears to directly refer to the three factual challenges listed directly above that checkbox. In light of the contents of Form I-851, we cannot say that DHS's expedited removal procedures offer an alien the opportunity to challenge the legal basis of his or her removal.

The above discussion should likewise make plain the limits of our holding. Nothing in our opinion prevents DHS from changing the Form I-851 to make it clear that DHS wishes to require aliens to raise legal arguments in expedited removal proceedings. Such a change would provide clear notice to aliens of their right to raise legal issues in a manner that the present form does not. The opportunity to raise a legal challenge would then become, as we have earlier noted, one of the "steps that the agency holds out" and therefore an administrative remedy that must be exhausted. Woodford v. Ngo, 548 U.S. 81, 90 (2006).

Because the Notice of Intent, Form I-851, expressly prompts aliens to raise only factual challenges to removal, we hold that Etienne was not required to raise his legal challenge to removal in order to meet the exhaustion requirement of INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). We therefore have jurisdiction to consider Etienne's petition for review.

15

B.

Having determined that we have jurisdiction to consider Etienne's petition for review, we now turn to the merits of his legal challenge. DHS found Etienne deportable under the INA for being an alien who has been convicted of an "aggravated felony," a 1996 drug conspiracy under Maryland law. The INA's definition of "aggravated felony" includes many types of crimes, including "illicit trafficking in a controlled substance," 8 U.S.C. § 1101(a)(43)(B), and "conspiracy to commit" another aggravated felony, "whether in violation of Federal or State law," id. § 1101(a)(43)(U).

The parties agree that the categorical approach applies to determining whether a state-law crime qualifies as an "aggravated felony" under the INA. Their dispute instead turns on whether, under the categorical approach, the term "conspiracy" in 8 U.S.C. § 1101(a)(43)(U) is defined as it was at common law or by the prevailing contemporary meaning of the term, which requires proof of an overt act. Etienne argues that, because the crime of conspiracy under Maryland law does not require proof of an overt act, his conviction does not qualify as an "aggravated felony."[3] In arguing that the common-

---

[3] Etienne does not challenge the classification of the object of his conspiracy as "illicit trafficking in a controlled
(Continued)

16

law definition of conspiracy does not apply, Etienne chiefly relies on Taylor v. United States, in which the Supreme Court declined to adopt the common-law definition of "burglary" for purposes of the categorical approach.  495 U.S. 575 (1990).

As we explain below, we find nothing in this context to rebut the presumption that Congress intended to incorporate the common-law meaning of conspiracy when it included that term in the INA.  We therefore hold that a state-law conspiracy conviction need not require an overt act as an element for the conviction to qualify as an "aggravated felony."

### 1.

Although the categorical approach was first introduced in the context of criminal law, it "has a long pedigree in our Nation's immigration law."  Moncrieffe v. Holder, 133 S. Ct. 1678, 1685 (2013).  "When the Government alleges that a state conviction qualifies as an 'aggravated felony' under the INA, we generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA."  Id. at 1684.

Under the categorical approach, "we consider only the elements of the statute of conviction rather than the

---

substance," as DHS found it was.  See A.R.1 at 2; 8 U.S.C. § 1101(a)(43)(B).

defendant's conduct underlying the offense," and compare them with the elements of the "generic" crime. <u>Omargharib v. Holder</u>, 775 F.3d 192, 196 (4th Cir. 2014). If the comparison shows that the state offense "has the same elements as the generic INA crime, then the prior conviction constitutes an aggravated felony." <u>Id.</u> If, however, the state offense "sweeps more broadly . . . , the prior conviction cannot count as an aggravated felony." <u>Id.</u> (internal quotation marks and citation omitted). Courts must first determine the meaning of the offense listed in the INA and then compare that "generic" definition to the elements of the crime under state law.

2.

To determine the meaning of the term "conspiracy" in the INA, our analysis begins with the "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms." <u>United States v. Shabani</u>, 513 U.S. 10, 13 (1994). At common law, conspiracy required only proof of "the act of conspiring," not of any overt act. <u>See</u> <u>id.</u> at 14 (quoting <u>Nash v. United States</u>, 299 U.S. 373, 378 (1913)). Following the common-law presumption, the Supreme Court has declined to read additional elements into federal law where the federal law uses the term "conspiracy" but is silent on an overt act requirement. <u>See</u> <u>id.</u> at 14. We follow the common-law presumption here, where

18

there is no contrary indication of Congressional intent that rebuts that presumption.[4]

In Taylor, the Supreme Court considered whether a state-law conviction qualified as a predicate "burglary" offense for the sentencing enhancement of the Armed Career Criminal Act, 18 U.S.C. § 924(e), even though the state law omitted some elements of common-law burglary.  495 U.S. at 579.  Noting that the common-law presumption need not apply when the common-law meaning of a term "is obsolete or inconsistent with the statute's purpose," the Court found compelling reasons to rebut the common-law presumption.  Id. at 592, 594-95.  Namely, the Court considered the number of states whose crimes would fall outside of the ambit of the common-law definition of "burglary" and the practical implications of following the common-law presumption, given the purposes of the statute at issue.

First, the Court noted that the various statutory changes to state-law definitions of burglary had "resulted in a modern crime which has little in common with its common-law ancestor except for the title of burglary," and that adopting the common-

_____

[4] Etienne urges this court to adopt the holding of the Ninth Circuit in United States v. Garcia-Santana.  774 F.3d 528 (9th Cir. 2014).  In that case, the Ninth Circuit distinguished "specific penal statutes," to which courts apply the common-law presumption, from statutes that "assign[] various immigration consequences to prior convictions," where courts do not presume the common law to apply.  Id. at 538.  We respectfully disagree that this distinction is relevant to the common-law presumption.

19

law definition would nullify the statute's effect under many states' criminal codes. Id. at 593 (quoting LaFave & Scott, Substantive Criminal Law § 8.13(g), p.476 (1986)). Where burglary is concerned, "[o]nly a few states retain the common-law definition, or something closely resembling it," while most states have done away with one or more of the "arcane distinctions embedded in the common-law definition." Id. For example, the Court noted that many states do not require a "breaking," or have broadened the concept of that term. Others have done away with the requirement that the structure be a "dwelling." Id. In addition, most states no longer require that the act occur at night. Id. The Court further noted that those discarded elements "have little relevance to modern law enforcement concerns." Id.

It is significant for our purposes that in Taylor, the common-law definition was more restrictive than the various states' alternatives. Given that statutory overrides of the common-law served to "expand[]" burglary liability, following the common-law presumption would have "come close to nullifying that term's effect in the statute." Id. at 593, 594. The Court reasoned that, "because few of the crimes now generally recognized as burglaries would fall within the common-law definition," that definition was "so obviously ill suited to [the statute's] purposes." Id. at 594. Thus, finding no

20

"specific indication that Congress meant to incorporate the common-law meaning" of that term, the Court interpreted "burglary" by its "contemporary meaning." Id. at 594, 596.

The common-law definition of conspiracy, unlike burglary in Taylor, is neither "obsolete [n]or inconsistent with the [INA's] purpose." See id. at 594. On the other hand, conspiracy under the various states' laws is little different from that crime at common law. There are only two prevalent definitions of conspiracy, unlike the myriad of formulations of "burglary" in state codes. One-third of the states retain the common-law definition outright, and the states that have modified common-law conspiracy have added a single element: the overt act requirement. Given the comparatively modest modifications to conspiracy liability, it is not the case that the states' statutory overrides have "little in common" with conspiracy's common-law counterpart aside from the name of the crime. See id. at 593.

Further, those states that have added the overt act requirement have narrowed the definition of conspiracy, quite unlike the states that expanded burglary liability by removing elements. Because of this, applying the common-law definition to conspiracy would not "come close to nullifying that term's effect," as it would have for burglary in Taylor. See id. at 594. To the contrary, imposing an overt act requirement

21

would render the term "conspiracy" null and void in all of the states that have retained the common-law definition. Moreover, applying the prevailing contemporary definition would mean that the term does not contemplate "at least the 'classic' common-law definition" of conspiracy, contrary to a basic assumption of Congress's intent in Taylor. See id. at 593.

Congress's desire to have the INA apply broadly is confirmed by the text of 8 U.S.C. § 1101(a)(43), which defines which offenses are "aggravated" and declares that the definition "applies to an offense . . . whether in violation of Federal or State law." It would be anomalous for Congress to have included "conspiracy" and specifically noted that the terms applied to state law if Congress also contemplated an overt act requirement. This reading would mean that Congress never intended the law to apply to conspiracy convictions in one-third of states but did not choose to indicate or otherwise explain this limitation. In short, we find no compelling reason that rebuts the common-law presumption in this case and cannot presume that Congress would have intended the term "conspiracy" to be a nullity in any state that follows the common law.[5]

---

[5] It would also run contrary to federal supremacy to allow a straw-poll of the states determine the meaning of federal law, or to change the meaning of federal law as the states change their approach to conspiracy liability.

3.

Having determined that the INA incorporates the common-law definition of "conspiracy," we must compare it to the state-law crime of conviction. Etienne's prior conviction was for conspiracy "to violate the controlled substances law of the State of Maryland." A.R.1 at 17. A conspiracy under Maryland law is a "combination of two or more persons to accomplish some unlawful purpose, or to accomplish a lawful purpose by unlawful means." Townes v. State, 548 A.2d 832, 834 (Md. Ct. App. 1988).

It is of no moment that this "crime is complete when the unlawful agreement is reached, and no overt act in furtherance of the agreement need be shown." See id. Because the INA incorporates the common-law definition of conspiracy, the term does not require proof of an overt act. Any state-law conspiracy to commit one of the substantive offenses listed in the INA therefore qualifies as an "aggravated felony" under the categorical approach.

4.

In sum, we conclude that nothing rebuts the common-law presumption when interpreting the term "conspiracy" in the INA. Accordingly, under the categorical approach, a state-law conspiracy need not require proof of an overt act to be classified as an "aggravated felony." We therefore hold that DHS properly classified Etienne's conviction.

23

III.

For the foregoing reasons, Etienne's petition for review is

DENIED.