WILKINSON, Circuit Judge, dissenting:
 

 The majority holds that the federal predicate offense of conspiracy to commit murder in aid of racketeering activity,
 
 18 U.S.C. § 1959
 
 (a)(5), is not a crime of violence under U.S.S.G. § 2K2.1. To reach this conclusion, it ignores the plain text of the federal statute and unmistakable textual command of the Guidelines provisions and commentary, which state in so many words that conspiracy to commit murder is a crime of violence. When the text is this plain, there is no reason to get into the ambiguous weeds of generic definitions, which can no more overcome a plain textual command than amorphous legislative history can overcome a clear statutory mandate.
 

 Even if one were to follow the elusive road to a generic definition the majority maps out, the conclusion would be the same. Neither the common law nor the great majority of federal conspiracy offenses requires an overt act. And state criminal definitions cannot be allowed to rework the textual clarity of the United States Sentencing Guidelines. Dual sovereignty runs in both directions. Just as there are limits to federal control over state criminal systems, so too are there limits to state control over federal criminal law.
 

 The majority's error is serious. In committing it, the majority ignores, misinterprets, or fails to follow Supreme Court and circuit precedent at every turn. In ignoring the Guidelines' plain text and in misapplying the basic generic-definition analysis, the majority has arrived at the deeply unfortunate conclusion that participation in a conspiracy to commit the enumerated violent crime of murder is somehow not a crime of violence. Properly applied, the categorical approach can ultimately coincide with common sense. Applied as the majority has done here, it reaches a result that no one inside or outside of Congress and the Sentencing Commission will ever
 understand. True, there may be some beings in some other planetary system who can make sense of it all, but for earthlings, not so much.
 

 I.
 

 This case is easily resolved by the plain language of the Guidelines and their commentary. This court "must follow the clear, unambiguous language of a particular guideline unless there is a manifestation of contrary intent."
 
 United States v. Achiekwelu
 
 ,
 
 112 F.3d 747
 
 , 755 (4th Cir. 1997). Because the commentary "is akin to an agency's interpretation of its own legislative rules ..., it must be given 'controlling weight unless it is plainly erroneous or inconsistent with' " the relevant guideline.
 
 Stinson v. United States
 
 ,
 
 508 U.S. 36
 
 , 45,
 
 113 S.Ct. 1913
 
 ,
 
 123 L.Ed.2d 598
 
 (1993) (quoting
 
 Bowles v. Seminole Rock & Sand Co.
 
 ,
 
 325 U.S. 410
 
 , 414,
 
 65 S.Ct. 1215
 
 ,
 
 89 L.Ed. 1700
 
 (1945) ).
 

 Because McCollum pled guilty to being a felon in possession of a firearm in violation of
 
 18 U.S.C. § 922
 
 (g), the relevant guideline is § 2K2.1. That guideline provides for a heightened base offense level if a defendant has previously been convicted of "a crime of violence."
 
 See
 
 U.S.S.G. § 2K2.1. The term "crime of violence" is not defined in § 2K2.1, but the commentary to that guideline instructs that the term "has the meaning given ... in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2."
 

 Id.
 

 § 2K2.1 cmt. n.1.
 

 First and foremost among the crimes of violence enumerated in § 4B1.2(a) is "murder."
 
 See
 

 id.
 

 § 4B1.2(a)(2). This is not surprising. Murder is singular. It is the quintessential violent crime. To leave no room for doubt, the commentary to § 4B1.2 instructs that "the offenses of aiding and abetting, conspiring, and attempting to commit" crimes of violence are also included within the crime of violence definition.
 

 Id.
 

 § 4B1.2 cmt. n.1.
 

 This clear textual command should by any measure wrap up this case. According to the text and commentary of the Guidelines, "conspiring ... to commit" "murder" is a crime of violence. This language maps perfectly onto the statutory language of
 
 18 U.S.C. § 1959
 
 (a)(5) : "conspiring to commit murder." If the Commission had wished to exclude this crime from the crime of violence definition, it would not have used language identical to that in the statute. Awaiting help from elsewhere, as the concurring opinion prefers, is like waiting in a bus station for someone who has long since arrived. The answer is already abundantly clear.
 

 It is also commonsensical. This court has long acknowledged that the statute under which McCollum was previously convicted "punishes violent crimes."
 
 United States v. Umaña
 
 ,
 
 750 F.3d 320
 
 , 336 (4th Cir. 2014). Further, "no mechanical exercise can ever fully supplant ... common sense and good judgment" when applying the Guidelines.
 
 United States v. Flores-Granados
 
 ,
 
 783 F.3d 487
 
 , 498 (4th Cir. 2015). Courts must be careful to "not read the Guidelines in a way that makes the Sentencing Commission look foolish."
 
 United States v. Turner
 
 ,
 
 998 F.2d 534
 
 , 538 (7th Cir. 1993). That is precisely what the majority has done in suggesting that the Commission meant to exclude from the definition of crime of violence the crime of conspiracy to commit murder when it used inclusively the words "conspiring to commit" "murder."
 

 Instead, the majority mechanically applies the generic-definition methodology employed in
 
 Taylor v. United States
 
 ,
 
 495 U.S. 575
 
 ,
 
 110 S.Ct. 2143
 
 ,
 
 109 L.Ed.2d 607
 
 (1990). But the Supreme Court has instructed that the
 
 Taylor
 
 framework is "not required by the categorical approach."
 

 Esquivel-Quintana v. Sessions
 
 , --- U.S. ----,
 
 137 S.Ct. 1562
 
 , 1571 n.3,
 
 198 L.Ed.2d 22
 
 (2017). To be sure, courts may find this approach useful when it "helps shed light on the common understanding and meaning of the federal provision being interpreted."
 

 Id.
 

 (internal quotation marks omitted). In
 
 Taylor
 
 , for instance, the Court emphasized that it was "not readily apparent" what "Congress intended 'burglary' to mean," in part because the term was defined by the courts and state criminal codes "in many different ways."
 
 495 U.S. at 580
 
 ,
 
 110 S.Ct. 2143
 
 . In that context, the Court found the generic-definition analysis to be a useful tool in divining Congress's intent.
 
 See
 

 id.
 

 at 598-99
 
 ,
 
 110 S.Ct. 2143
 
 . And this court has likewise found
 
 Taylor
 
 's generic-definition approach to be a useful tool in some cases.
 
 See, e.g.
 
 ,
 
 United States v. Dozier
 
 ,
 
 848 F.3d 180
 
 , 185-87 (4th Cir. 2017) (describing the "unique complexity of general attempt statutes" for purposes of applying the Guidelines before applying the generic-definition approach);
 
 United States v. Rangel-Castaneda
 
 ,
 
 709 F.3d 373
 
 , 376 (4th Cir. 2013) (noting that "where Congress has not indicated how a prior offense enumerated in a sentencing enhancement statute is to be interpreted," courts should consider the "generic" meaning of the crime).
 
 [1]
 

 But when a guideline's meaning is already patently clear from its text, structure, and context, there is no need to rely on the
 
 Taylor
 
 framework. In its reliance on that framework, the majority is in conflict not only with the Supreme Court's decision in
 
 Esquivel-Quintana
 
 ,
 
 137 S.Ct. at
 
 1571 n.3, but also with three other circuits,
 
 see
 

 United States v. Rivera-Constantino
 
 ,
 
 798 F.3d 900
 
 , 904 (9th Cir. 2015) ("[W]hen the plain meaning of a term is readily apparent from the text, context, and structure of the relevant Guidelines provision and commentary, that meaning is dispositive....");
 
 United States v. Sanbria-Bueno
 
 ,
 
 549 Fed.Appx. 434
 
 , 438 (6th Cir. 2013) (declining to apply the generic-definition approach because it "is only applied to interpret the underlying offense where it is unclear in what sense the term was used by Congress or the Sentencing Commission" (citations omitted));
 
 United States v. Rodriguez-Escareno
 
 ,
 
 700 F.3d 751
 
 , 754 (5th Cir. 2012) ("There is no reason to search outside the Guidelines for a definition of 'conspiracy'...."). Indeed, the use of the generic-definition framework in plain-meaning cases would not only be unhelpful but may prove positively detrimental. It "would only becloud what is clear from the Guideline itself."
 
 Rodriguez-Escareno
 
 ,
 
 700 F.3d at 754
 
 . And in doing so, it would frustrate the goals of the Commission, introducing uncertainty and inconsistency where the Commission sought to avoid it and allowing the most violent cohort of criminal offenders to avoid the enhanced penalties the Commission felt they deserved.
 

 The majority wishes the Commission had defined conspiracy differently, namely in the way the majority prefers. But the Commission spoke, mercifully, in plain, non-Delphic language. To get where it wishes to go, the majority implies qualifiers to the simple term conspiracy; it succumbs to the most ancient of antitextual practices, which is to add the proverbial gloss.
 

 This case is one in which reliance on the generic-definition framework is wholly unnecessary. The Guidelines are clear.
 

 "[M]urder" is a crime of violence. U.S.S.G. § 4B1.2(a)(2). "[C]onspiring ... to commit" any crime of violence is itself a crime of violence.
 

 Id.
 

 § 4B1.2 cmt. n.1. Therefore, conspiracy to commit murder is a crime of violence.
 

 Case closed. End of story.
 

 II.
 

 The majority's decision to undertake the generic-definition analysis, and its erroneous application of that analysis, has serious consequences. For the majority's view will do nothing less than label nonviolent a multitude of state and federal convictions for conspiracy to commit one of the enumerated violent offenses in § 4B1.2. It would render nonviolent such crimes as conspiracy to commit genocide,
 
 18 U.S.C. § 1091
 
 (d) ; conspiracy to use weapons of mass destruction,
 

 id.
 

 § 2332a; conspiracy to commit arson,
 

 id.
 

 § 81; and conspiracy to take hostages,
 

 id.
 

 § 1203(a).
 
 See
 

 United States v. Pascacio-Rodriguez
 
 ,
 
 749 F.3d 353
 
 , 363 n.45 (5th Cir. 2014). The majority would introduce disuniformity into federal sentencing, as conspiracy convictions would be counted in different ways, notwithstanding their essential similarity in being "offenses of ... conspiring ... to commit" crimes of violence. U.S.S.G. § 4B1.2 cmt. n.1. The majority would further require federal courts to tally up state laws even where the federal Guidelines language could not be more clear. Its errors are thus twofold: one in adopting the generic-definition framework in the first place, and the other in applying it so improperly. Either error by itself would be serious; together they are egregious.
 

 All this is done in the course of nullifying directly applicable circuit precedent. In
 
 Etienne v. Lynch
 
 ,
 
 813 F.3d 135
 
 (4th Cir. 2015), this circuit, indeed this very panel, held that generic conspiracy does not contain an overt act requirement. I had supposed
 
 Etienne
 
 to be the law of the circuit until the majority pulled the rug out from under its own decision.
 

 The majority attempts to distinguish
 
 Etienne
 
 on the ground that that case involved the INA whereas this case involves the Guidelines. Maj. Op. at 308-09. Armed with no support, it asserts that the Guidelines are exempt from the "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the
 
 common law
 
 definition of statutory terms."
 
 Id.
 
 at 308 (quoting
 
 Etienne
 
 ,
 
 813 F.3d at
 
 143 ). But that is not the case. In fact,
 
 Taylor
 
 -the very authority the majority declares itself "bound by"-began with the common law.
 

 The Court in
 
 Taylor
 
 inquired into "the generic sense in which ['burglary'] is now used in the criminal codes of most States,"
 
 495 U.S. at 598
 
 ,
 
 110 S.Ct. 2143
 
 , but only after determining that there was good reason to depart from "the maxim that a statutory term is generally presumed to have its common-law meaning,"
 

 id.
 

 at 592
 
 ,
 
 110 S.Ct. 2143
 
 . This was because "the contemporary understanding of 'burglary' ha[d] diverged a long way from its common-law roots," and so relying on the common-law definition "would not [have] comport[ed] with the purposes of the enhancement statute."
 

 Id.
 

 at 593
 
 ,
 
 110 S.Ct. 2143
 
 . Instead, it would have "come close to nullifying" the enhancement by placing the vast majority of burglary offenses beyond its scope.
 

 Id.
 

 at 594
 
 ,
 
 110 S.Ct. 2143
 
 .
 

 As in
 
 Taylor
 
 , the analysis here ought to begin with the common law. As the Supreme Court has "consistently held[,]... the common law understanding of conspiracy 'does not make the doing of any act other than the act of conspiring a condition of liability.' "
 
 United States v. Shabani
 
 ,
 
 513 U.S. 10
 
 , 13-14,
 
 115 S.Ct. 382
 
 ,
 
 130 L.Ed.2d 225
 
 (1994) (quoting
 
 Nash v. United States
 
 ,
 
 229 U.S. 373
 
 , 378,
 
 33 S.Ct. 780
 
 ,
 
 57 L.Ed. 1232
 
 (1913) ). In other words, conspiracy at common law did not have an overt act requirement.
 

 As this court explained in
 
 Etienne
 
 , there is no reason to jettison this common-law definition. First, whereas in
 
 Taylor
 
 only a handful of states had retained burglary's common-law definition,
 
 495 U.S. at 593
 
 ,
 
 110 S.Ct. 2143
 
 , today one-third of states retain the common-law definition of conspiracy,
 
 Etienne
 
 ,
 
 813 F.3d at 144
 
 .
 
 [2]
 
 The contemporary understanding of conspiracy, then, has more than a " 'little in common' with conspiracy's common-law counterpart."
 

 Id.
 

 Second, whereas in
 
 Taylor
 
 the vast majority of states had "expanded" the definition of burglary,
 
 495 U.S. at 593
 
 ,
 
 110 S.Ct. 2143
 
 , in the case of conspiracy, "those states that have added the overt act requirement have
 
 narrowed
 
 the definition,"
 
 Etienne
 
 ,
 
 813 F.3d at 144
 
 . Conspiracy's common-law definition would therefore encompass even those modified state offenses.
 

 The bond between statutory usages and common law, so basic also to American law, has been too casually broken. It is simply not the case that adopting the common-law definition of conspiracy would "come close to nullifying" that term in the Guidelines.
 
 Taylor
 
 ,
 
 495 U.S. at 594
 
 ,
 
 110 S.Ct. 2143
 
 . Rather, that is precisely the consequence of the majority's addition of an overt act requirement. Its dismissal of the common law, as noted, is no small matter. It will exclude from the Guidelines' crime of violence definition the vast majority of federal conspiracy offenses-including multiple murder-conspiracy offenses-and roughly one-third of all state conspiracy offenses. This is not what the Commission intended. Because the common-law definition of conspiracy is neither "obsolete" nor "inconsistent with the [guideline]'s purpose," the search for a generic definition of conspiracy need go no further.
 

 Id.
 

 at 594
 
 ,
 
 110 S.Ct. 2143
 
 .
 

 But further the majority goes, and the more severe its error grows. For proper application of the multijurisdictional analysis in this case indicates that the contemporary understanding of conspiracy does not contemplate an overt act requirement. The multijurisdictional method of divining generic definitions calls upon courts to survey the overall landscape of criminal laws in the various jurisdictions across the country, including both the federal government and the states.
 
 See
 

 Taylor
 
 ,
 
 495 U.S. at 598-99
 
 ,
 
 110 S.Ct. 2143
 
 ;
 
 Rangel-Castaneda
 
 ,
 
 709 F.3d at 377-78
 
 (consulting the laws of the federal government, the states, and the District of Columbia). The majority, without explanation, narrows the inquiry to "
 
 state
 
 definitions," refusing to give appropriate weight to federal law. Maj. Op. at 308 n.10. By putting a thumb on the scale, the majority warps the overall balance of relevant authorities, which in reality cannot be reconciled with its holding.
 

 The lion's share of federal conspiracy statutes contain no overt act requirement. As the Fifth Circuit tallied in 2014, 24 federal conspiracy statutes require an overt act whereas 142 do not.
 
 See
 

 Pascacio-Rodriguez
 
 ,
 
 749 F.3d at 360-62
 
 . The majority relies wholly on the general federal conspiracy statute, which does require an overt act.
 
 18 U.S.C. § 371
 
 . But that provision covers a wide variety of violent and nonviolent offenses, and is therefore
 far broader than the sort of conspiracy the Sentencing Commission was concerned with here. The great majority of federal conspiracy provisions dealing specifically "with conspiracies to commit crimes that arguably would be within the definition of a 'crime of violence' " contain no such requirement.
 
 Pascacio-Rodriguez
 
 ,
 
 749 F.3d at 362
 
 (noting that 8 such provisions "require an overt act, while 43 do not" (footnote omitted)). Surely the Commission did not intend to exclude those offenses when it included conspiracy within the crime of violence definition.
 

 The majority correctly notes that most states have added an overt act requirement to their own conspiracy statutes. Maj. Op. at 307-08. But the number of states that retain the common-law definition is by no means "few."
 
 Taylor
 
 ,
 
 495 U.S. at 593
 
 ,
 
 110 S.Ct. 2143
 
 . Rather, "[o]ne-third of the states retain the common-law definition [of conspiracy] outright."
 
 Etienne
 
 ,
 
 813 F.3d at 144
 
 . As the majority sees it, this two-thirds cluster of state conspiracy statutes requiring an overt act "is sufficient to establish the contemporary definition of conspiracy as such." Maj. Op. at 308. If those state laws aligned with the federal law, I might be inclined to agree.
 
 See
 

 Rangel-Castaneda
 
 ,
 
 709 F.3d at 377
 
 . But here those state laws must be weighed against the overwhelming consensus among federal conspiracy statutes that no overt act is necessary.
 

 Even more fundamentally, "allow[ing] a straw-poll of the states [to] determine the meaning of federal law" would "run contrary to federal supremacy."
 
 Etienne
 
 ,
 
 813 F.3d at
 
 145 n.5. To hold that the plain meaning of a guideline must change whenever the number of states shifts leaves federal law in an unstable condition. The majority inexplicably pays scant attention to federal law in its bean-counting exercise even though the text it claims to be applying is the United States Sentencing Guidelines. Our government is designed to accord respect for the distinct provinces of the dual sovereigns that comprise it. The principle of dual sovereignty reverberates in such varied contexts as the Fifth Amendment's guarantee against double jeopardy,
 
 see
 

 Heath v. Alabama
 
 ,
 
 474 U.S. 82
 
 , 90-91,
 
 106 S.Ct. 433
 
 ,
 
 88 L.Ed.2d 387
 
 (1985), and the anti-commandeering principle,
 
 see
 

 New York v. United States
 
 ,
 
 505 U.S. 144
 
 , 176,
 
 112 S.Ct. 2408
 
 ,
 
 120 L.Ed.2d 120
 
 (1992). So too does that principle resonate in cases such as this. While the criminal laws of the states may help illuminate the definitions of generic federal crimes, it is ultimately the intent of the federal lawmakers that must control. And in this case, that intent could not be more clear.
 

 III.
 

 The majority has ignored plain Guidelines text, its own prior precedent, and elementary common sense. It has embraced the principle that law must of necessity be counterintuitive, that the straightforward must yield to the convoluted, and that the obscure must supersede the obvious, as though clouds had been summoned to hide the sun. And this, finally, is what we have come to: plotting to murder one's fellow human beings is not a crime of violence.
 

 Heaven help us.
 

 Notably, the government did not argue in either
 
 Dozier
 
 or
 
 Rangel-Castaneda
 
 that the generic-definition analysis was unnecessary. In neither case, then, was the court asked to choose between a conclusion rooted in the Guidelines' plain meaning and one based on
 
 Taylor
 
 's generic-definition approach.
 

 The Fifth Circuit counted "34 states [that] require an overt act as an element of all criminal conspiracies" and "13 states [that] do not require an overt act for any conspiracy offense."
 
 Pascacio-Rodriguez
 
 ,
 
 749 F.3d at 365
 
 . Arizona, New Jersey, and Utah require an overt act for some crimes.
 

 Id.
 

 (citing
 
 Ariz. Rev. Stat. Ann. § 13-1003
 
 (A) ; N.J. Stat. Ann. § 2C:5-2(d) ;
 
 Utah Code Ann. § 76-4-201
 
 ).