# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 26, 2013

No. 12-60677

Lyle W. Cayce
Clerk

ELIGIO VALDIVIEZ-HERNANDEZ, also known as Pablo Hernandez, also known as Al Hernandez, also known as Pable Hernandez,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Department of Homeland Security

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Petitioner Eligio Valdiviez-Hernandez seeks review of the Department of Homeland Security's Final Administrative Removal Order issued pursuant to the Immigration and Nationality Act (INA) § 238(b) , 8 U.S.C. § 1228(b). Because Valdiviez was an alien convicted of an aggravated felony, he was properly subject to the expedited administrative removal process. The petition is denied.

No. 12-60677

## I.

Valdiviez, a native and citizen of Mexico, entered the United States unlawfully as a child in the 1960s and lived continuously in the United States until his removal. In February 2011, Immigration and Customs Enforcement (ICE) initiated an investigation into Valdiviez for "fraudulently using the identity of a deceased person named Pablo Hernandez." The investigation revealed that Validiviez had used Pablo Hernandez's social security number, and obtained property, bank accounts, driver's licenses, and vehicles using the stolen identity. While searching Valdiviez's home and vehicle pursuant to a warrant, ICE agents found thirteen firearms. On November 18, 2011, Valdiviez pleaded guilty to and was convicted of one count of being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5).

On January 24, 2012, the Department of Homeland Security (DHS) issued to Valdiviez while he was still serving his sentence a Notice of Intent, informing him that he was subject to expedited removal pursuant to INA § 238(b), 8 U.S.C. § 1228(b). Valdiviez refused to sign the Notice of Intent. Valdiviez did not exercise his right to file a written response to the Notice of Intent. On February 28, 2012, DHS served Valdiviez with a Final Administrative Removal Order (FARO), stating that Valdiviez was removable because he had been convicted of an aggravated felony and was not a citizen of the United States nor lawfully admitted for permanent residence. The FARO further stated that Valdiviez was "ineligible for any relief from removal that the Secretary of Homeland Security may grant in an exercise of discretion."

Valdiviez subsequently expressed fear of persecution or torture if he returned to Mexico. A "reasonable fear" interview was conducted by the asylum office. *See* 8 C.F.R. § 208.31(b). The asylum officer determined that Valdiviez did not have a reasonable fear of persecution or torture. Valdiviez sought review of the asylum officer's decision by an Immigration Judge (IJ). *Id*. § 208.31(g). The

No. 12-60677

IJ upheld the asylum officer's decision. No further appeals were available to Valdiviez. *Id*. § 208.31(g)(1).

Valdiviez filed a motion for stay of removal with this court. While the motion and petition for review were pending, Valdiviez was removed to Mexico. He subsequently filed a motion asking this court for an order (1) directing ICE to show cause why this court should not impose sanctions; or (2) instruct ICE to return Valdiviez to the United States; or (3) admonish ICE for usurping judicial authority. The motion was carried with this case.

## II.

Valdiviez challenges two aspects of the FARO. First, Valdiviez argues that he is not subject to the expedited removal process because he is not an alien as described in the removal statute. Specifically, Valdiviez asserts that the expedited removal process applies only to aliens **who** have been "admitted" to the United States and have committed an aggravated felony, and does not apply to aliens who entered the United States unlawfuly. Second, he argues that the FARO incorrectly stated that he was not entitled to any discretionary relief, which would qualify him for an adjustment of status.

## A.

Two issues must be addressed in analyzing whether we have jurisdiction to consider this petition for review.  First, there is generally no right to seek review of an order of removal entered by a Department of Homeland Security Service officer after expedited removal procedures. 8 U.S.C. § 1252(a)(2)(c); 8 C.F.R. § 238.1.  Even if an exception exists, judicial review can be had of "a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).  The exhaustion requirement is jurisdictional. *See Lopez-Dubon v. Holder*, 609 F.3d 642, 644 (5th Cir. 2010).  We address the exhaustion point first.

No. 12-60677

The government asserts that Valdiviez failed to exhaust his administrative remedies because he did not file a response to the Notice of Intent, leaving this court without jurisdiction to review his petition. Valdiviez counters that the available administrative remedies are limited to challenges of factual deficiencies, not legal conclusions. He further argues that DHS officers are not trained to interpret immigration statutes to the extent of an IJ or the Board of Immigration Appeals (BIA).

INA § 238(b), 8 U.S.C. § 1228(b), authorizes the Attorney General to expedite removal of an alien who is not a lawful permanent resident and who is deportable for committing an aggravated felony. 8 U.S.C. § 1228(b)(1), (2)(A). The alien has ten calendar days to file a written response to the Notice of Intent. 8 C.F.R. § 238.1(c)(1). In response, an alien may designate a country of removal; rebut the allegations supporting the charge; request to review the Government's evidence supporting the charge; request an extension of time to respond; and request withholding of removal under the Convention Against Torture (CAT). *Id.* If the alien does not timely rebut the charges, a DHS officer issues a FARO and the alien may be removed fourteen days after issuance of that order. *Id.* § 238.1(d)(1).

Valdiviez challenges the FARO's legal conclusion that he is subject to the expedited removal process on the ground that it applies only to aliens "admitted" to the United States. Although the Notice of Intent included conclusions of law and Valdiviez had an opportunity to respond to the allegations supporting the charges against him, the relevant regulations indicate that the response process is geared toward resolving only issues of fact. *Id.* §238.1(d)(2)(i),(ii) (stating that the DHS officer may base its decision following a response to a Notice of Intent on whether or not the alien demonstrated a genuine issue of material fact). Further, aliens subject to expedited removal do not appear before an IJ, nor can they appeal an adverse decision to the BIA. *See generally id.* § 238.1. The

No. 12-60677

relevant statutes and corresponding regulations therefore did not provide Valdiviez with an avenue to challenge the legal conclusion that he does not meet the definition of an alien subject to expedited removal. As such, Valdiviez did not fail to exhaust his administrative remedies.[1]

### B.

Even without the bar of exhaustion, there is still the impediment that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an aggravated felony]." 8 U.S.C. § 1252(a)(2)(C). Nonetheless, another section of that same statute recognizes that "an appropriate court of appeals" has jurisdiction to consider "constitutional claims or questions of law raised upon a petition for review." *Id.* 1252(a)(2)(D). The claims presented are of that nature, and we have jurisdiction to review them.

### 1.

The prerequisites for expedited removal are that the person be (1) an alien, (2) who has committed a crime covered in 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felony), and (3) has not been admitted, even conditionally, as a lawful permanent resident:

> (b) Removal of aliens who are not permanent residents
>
> (1) The Attorney General may, in the case of an alien described in paragraph (2), determine the deportability of such alien under section 1227(a)(2)(A)(iii) of this title (relating to conviction of an aggravated felony) and issue an order of removal pursuant to the procedures set forth in this subsection or section 1229a of this title.
>
> (2) An alien is described in this paragraph if the alien–

---

[1] This is not to say that there are no administrative remedies available to a petitioner challenging a Notice of Intent; rather, under the circumstances of this case, the legal question presented was not subject to the available methods of administrative review set forth in 8 C.F.R. § 238.1(c)(1), (d)(2)(i),(ii).

(A) was not lawfully admitted for permanent residence at the time at which proceedings under this section commenced; or

(B) had permanent resident status on a conditional basis . . . at the tie that proceedings under this section commenced.

8 U.S.C. § 1228(b).

There is no dispute that Valdiviez is an alien who committed an aggravated felony (illegal alien in possession of a firearm), and who has no status as a lawful permanent resident. Indeed, Valdiviez conceded he was removable as an aggravated felon. Section 1227 (a)(2)(A)(iii) states that "[a]ny alien who is convicted of an aggravated felony *at any time after admission* is deportable." (emphasis added). The term "admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A).

Valdiviez argues that § 1228(b) requires an alien to have been convicted of an aggravated felony as defined in § 1227(a)(2)(A)(iii) in order to be subject to expedited removal, and § 1227(a)(2)(A)(iii) requires that an alien have committed the aggravated felony after having been "admitted" to the United States. Valdiviez asserts that because he was not admitted into the United States but instead entered unlawfully, he does not meet the requirements incorporated by reference into § 1228(b) and is not subject to expedited removal. Essentially, Valdiviez argues that expedited removal proceedings apply only to lawfully admitted non-permanent resident aliens who committed aggravated felonies.

This argument has been uniformly rejected by other courts of appeals. *See Us-Zepeda v. Holder*, 446 F. App'x 562, 563 (4th Cir. Sept. 15, 2011) (finding that petitioner was properly subject to expedited removal proceedings despite petitioner not having been "admitted" to the United States); *G.S. v. Holder*, 373 F. App'x 836, 847 (10th Cir. Apr. 15, 2010) (finding that § 1228(b) applies to

aliens not lawfully admitted for permanent residence and that the "cross-reference to § 1227(a)(2)(A)(iii) simply mean[s] that, among persons who are not permanent residents, *only aggravated felons* are subject to expedited administrative removal, regardless of whether they were previously admitted" (internal quotations omitted and alterations in original)); *United States v. Hernandez-Vermudez*, 356 F.3d 1011, 1014-15 (9th Cir. 2004) (deferring to the Attorney General's interpretation that § 1228(b) applies to aliens who are not lawful permanent residents); *Bamba v. Riley*, 366 F.3d 195, 198 (3rd Cir. 2004) (finding that the "better interpretation" of § 1228(b) is that the statute applies to all aliens not admitted for permanent residence who committed an aggravated felony); *Bazan-Reyes v. I.N.S.*, 256 F.3d 600, 605 (7th Cir. 2001) (finding that nothing in § 1228(b) limits the expedited removal process to "admitted" aliens).

Such unanimity indicates the common-sense appeal to the outcome each court reached. Even so, we are not immune, as likely neither were the other circuits, to the logical appeal of a textual argument that Congress limited the applicability of expedited removal under § 1228(b)(1) to the terms of the statute it incorporates by reference, namely, § 1227(a)(2)(A)(iii). We conclude the textual argument is weak for the following reasons.

In 1990 when "aggravated felony" was added to the other grounds for deportability under what is now § 1227, it referred to an "alien who is convicted of an aggravated felony at any time after *entry* is deportable." Immigration Act of 1990, Pub. L. No. 101-649, sec. 602, 104 Stat. 4978, 5077-5080. That language was not changed when what is now Section 1228(b)(1) was adopted in 1994. The adoption of the Illegal Immigration Reform Responsibility Act of 1996 (IIRIRA), caused the word "entry" to be changed to "admission" in § 1227(a)(2)(A)(iii). Pub. L. No. 104-208, sec. 308, 110 Stat. 3009-546, 3009-621. As we will discuss shortly, it is clear that Congress sought to streamline the procedures for removing aliens convicted of aggravated felonies. Because the new procedures

No. 12-60677

adopted in 1994 applied to all who had made an "entry," it did not matter whether the offense was committed after inspection and admission, or after a surreptitious and illegal entry. To accept petitioner's argument, we would have to conclude that the enactment of IIRIRA in 1996 narrowed the application of expedited removal for reasons that are entirely unclear.

We discern a different effect, one that illuminates the relation between the relevant provisions of § 1227 and § 1228. The many subparts of § 1227 identify "classes of deportable aliens" who upon order of the Attorney General may be deported. § 1227(a). The Attorney General may exercise that authority through removal proceedings commenced by an immigration judge. *See* 8 U.S.C. §§ 1229 & 1229a. Those proceedings may require determining whether an alien is an aggravated felon under the requirements of § 1227(a)(2)(A)(iii). Congress in 1996 changed the point at which deportation grounds under § 1227 applied to an alien instead of exclusion grounds under § 1182, making the decision turn on whether the alien had been admitted. The effects were these:

> The regulatory focus on admission rather than entry is in large part the product of Congress's comprehensive revision of the Immigration and Nationality Act in 1996. Prior to 1996, . . . noncitizens who had entered – even surreptitiously – were subject to grounds of deportability rather than excludability; they were also entitled to the greater procedural protections of a deportation proceeding rather than an exclusion proceeding. In 1996, Congress rewrote the INA, largely eliminating the exclusion-deportation line and replacing it with a focus on the concept of "admission." . . . And because admission is specifically defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer," this change puts immigrants who sneak across the border on the same footing as those who present themselves at the border. INA § 101(a)(13), 8 U.S.C. § 1101(a)(13). Both are subject to the grounds of inadmissibility, and both are more likely to be screened using summary procedures.

Adam Cox and Eric A. Posner, *The Second-Order Structure of Immigration Law*, 59 STAN L. REV. 809, 822 n.61 (2007).

After 1996, an alien who had been convicted of qualifying offenses under Section 1227, such as a crime involving moral turpitude, or certain multiple criminal convictions, or certain drug or firearm offenses, or any aggravated felony, could be ordered removed by an immigration judge when, besides any other requirements, there was proof that the alien committed such an offense after admission.  8 U.S.C. § 1227 (a) (2)(A) & (B).

Section 1228 gave the Attorney General authority to make available "special removal proceedings at certain Federal, State, and local correctional facilities" for those convicted of any of several offenses, including but not limited to aggravated felonies.  § 1228(a)(1).  This section allows § 1229a proceedings, with certain exceptions, to take place within the institutions.  *Id.*  Section 1228(a)(3) requires the Attorney General to adopt procedures for aliens convicted of aggravated felonies so that their removal proceedings will be completed before their release from prison.  § 1228(a)(3)(A).

In addition to Section 1228(a)'s institutional removal program, Section 1228(b) provides for an administrative removal program that does not involve an immigration judge, does not provide for an administrative appeal, and judicial review is available, if at all, on limited terms such as we discussed earlier.  *See* 8 C.F.R. § 238.1 (details the procedures for expedited removal).  Though petitioner Valdiviez was processed for removal while in prison serving his sentence for an aggravated felony, § 1228(b) does not state that the procedures apply only to those currently incarcerated.

These procedures may be used for "an alien described in paragraph (2)," *i.e.*, an alien without lawful permanent resident status.  § 1228(b)(1) & (2).  There is no suggestion that the class of aliens to whom these special procedures apply is further limited.  Thus, the expedited procedures apply to aliens admitted after inspection and to those who evaded inspection.  When § 1227 was revised two years after the adoption of § 1228(b), the change shifted the dividing line

No. 12-60677

between when deportation grounds would apply to someone with a conviction for an aggravated felony and when exclusion rules would apply. We see § 1228 as independent of the different deportation and exclusion grounds and procedures. It creates a summary process for removing aliens with qualifying convictions, many and perhaps most being processed while they are serving their prison sentences so that they will be removed immediately after completing them. To apply limits from § 1227 and distinguish between summary procedures applicable to prison inmates who were and those who were not admitted into the country is a complete variance from the thrust of § 1228(b).[2] Even if DHS also uses these expedited procedures for those not then serving prison sentences (and we have no evidence on that), such wider availability does not affect that there is neither § 1228 text nor logical reason for using prior valid admission to limit which aggravated felons, as they are completing their prison sentences, can be removed expeditiously.

Confirmation of our understanding appears in the regulations that were adopted by the Department of Homeland Security. *See* 8 C.F.R. § 238.1.[3] An administrative removal order may be entered if the following findings are made: (1) the person is an alien, (2) is not a lawful permanent resident; (3) has been

---

[2] Valdiviez argues that by stating the "deportability" of an alien is to be determined in the expedited removal procedures, Congress was adopting the INA's distinction between aliens who have been admitted and are "deportable" and aliens who have not been admitted and are "inadmissible." *Cf.* 8 U.S.C. § 1182 (captioned "inadmissible aliens") and 8 U.S.C. § 1227 (captioned "deportable aliens"). Valdiviez argues that Congress must have intended § 1228(b)'s expedited removal proceedings to apply only to "deportable" aliens, *i.e.,* those aliens subject to grounds for deportation which apply only after admission. We accept that using the word "removability" would have fit better with our interpretation of § 1228(b), but we do not agree that the word choice overcomes all the contrary indications of the breadth of coverage. At most the word creates ambiguity, which, as we will discuss, is dispelled by the regulations adopted first by the Attorney General, and now implemented by DHS.

[3] Section 1228(b)(1) gives the Attorney General authority to promulgate regulations. This obligation was transferred to the Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, sec. 441, 116 Stat. 2135, 2177.

convicted of an aggravated felony as defined in Section 101(A)(43) of the INA, and (4) is deportable under Section 1227(a)(2)(A)(iii), "including an alien who has neither been admitted nor paroled, but who is conclusively presumed to be deportable . . . by operation of section 238(c)." 8 C.F.R. § 238.1(b)(1)(i)-(iv). Thus, the regulation anticipates the current argument and states that the expedited procedures apply even if the alien has never been admitted.

Valdiviez argues that the statutes are ambiguous and DHS's interpretation of § 1228(b) is unreasonable. We have noted the complexities of the language that Congress used. To the extent the statutory scheme is ambiguous, we defer to DHS's interpretation of § 1228(b), which we find not only to be reasonable but largely to be compelled by the statutory text. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

In sum, we agree with our sister circuits and hold that § 1228(b)'s expedited removal process applies to all aliens convicted of an aggravated felony who are not admitted for permanent residence. That makes this section a self-contained set of provisions for special treatment of aggravated felons. We decline to interpret the cross reference in § 1228(b) to aggravated felony crimes in § 1227(a)(2)(A)(iii) as a narrowing of the class of aliens subject to the expedited removal process. Moreover, Valdiviez's proposed interpretation would contravene Congress's intent to expedite removal of aliens who have committed aggravated felonies. *See Zhang v. INS*, 274 F.3d 103, 108 (2d Cir. 2001) ( "[I]t is beyond cavil that one of Congress's principal goals in enacting IIRIRA was to expedite the removal of aliens who have been convicted of aggravated felonies." (citations omitted and alterations in original)); *Hernandez–Vermudez*, 356 F.3d at 1014 ("There simply is no denying that in enacting . . . [IIRIRA], Congress intended to expedite the removal of criminal aliens." (citing H.R. Conf. Rep. No. 104–828, at 215 (1996); H.R. Rep. No. 104–469(I), at 12, 107, 118–25 (1996))).

No. 12-60677

Because Valdiviez is an alien, an aggravated felon, and not a lawful permanent resident, he was subject to expedited removal proceedings.

**2.**

Valdiviez also argues that the FARO incorrectly advised him that he was ineligible for any discretionary relief from removal. Specifically, Valdiviez argues that he was prima facie eligible for the "Registry," a mechanism that permits the Attorney General, in his discretion, to grant permanent resident status to individuals who have resided continuously in the United States since January 1, 1972; demonstrate good moral character; are not ineligible for naturalization; and are not otherwise deportable. *See* INA § 249, 8 U.S.C. § 1259. Valdiviez asserts that the INA does not automatically disqualify aliens with criminal records, but rather requires consideration of several factors to determine whether the alien is of good moral character.

Section § 1228(b)(5), however, states that "[n]o alien described in this section shall be eligible for *any relief* from removal that the Attorney General may grant in the Attorney General's discretion." 8 U.S.C. § 1228(b)(5) (emphasis added); *see also United States v. Benitez-Villafuerte*, 186 F.3d 651, 659 (5th Cir. 1999). Valdiviez is subject to removal under § 1228(b) and thus is statutorily ineligible for any discretionary relief.

**III.**

Valdiviez was removed by ICE to Mexico while this petition for review and his motion for stay of removal were pending. Due to his removal, Valdiviez filed a motion with this court seeking an order (1) directing ICE to show cause why this court should not impose sanctions; or (2) alternatively, instruct ICE to return Valdiviez to the United States; or (3) alternatively, admonish ICE for usurping judicial authority.

On September 11, 2012, Valdiviez filed a motion for stay of removal with this court. On October 24, 2012, this court ordered Valdiviez to submit a brief in

support of his motion for stay of removal, and later ordered the Government to respond. Valdiviez was removed while the motion to stay was pending and this court subsequently denied the motion as moot.

Valdiviez argues that by removing him to Mexico while his motion for stay of removal was pending, ICE usurped this court's authority and interfered with this court's discretion to determine whether a stay was warranted. He asserts that the Government intentionally removed Valdiviez in order to render his motion for stay of removal moot. Valdiviez contends that removal of aliens pending a motion for stay of removal is a common practice of ICE officials in the Fifth Circuit. The Government asserts that there was no intention to usurp this court's authority, nor any evidence to support Valdiviez's contention that the removal was designed to moot his stay request. The Government further contends that Valdiviez was not diligent in seeking a stay of removal and failed to make inquires into his removal status as was required. *See* FIFTH CIRCUIT RULE 27.3.1.

ICE did not violate any order of this court. Further, neither the relevant portions of the INA nor the regulations provide for an automatic stay of an alien's removal during the 30-day period for an alien to file a petition for review with this court. *See* 8 U.S.C. § 1252(b)(3)(B); *Tesfamichael v. Gonzales*, 411 F.3d 169, 171 (5th Cir. 2005). Rather, the grant of a stay is an exercise of judicial discretion based on the circumstances of the case. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009). Finally, although this court would certainly disapprove of any practice by ICE officials to intentionally thwart rulings on motions for stay of removal, there is no evidence before this court to support such allegation. Because we conclude that the INS acted lawfully in removing Valdiviez while his motion for stay of removal was pending, his motion is denied.

No. 12-60677

## IV.

For the foregoing reasons, the petition for review is DENIED. The motion carried with the case is DENIED.

No. 12-60677

E. GRADY JOLLY, Circuit Judge, specially concurring:

I concur in the result the panel reaches. In my opinion, however, the plain reading of 8 U.S.C. § 1228(b), for which the petitioner advocates, is that provision's best interpretation. I concur solely because I defer to the Department of Homeland Security and all other circuits that have addressed the provision, *cf. Chevron, U.S.A., Inc. V. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), and thus I can see no compelling reason to initiate a circuit split.