**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2439
_____

ALEXIS FERNANDO BARRADAS JACOME,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an
Order from the Department of Homeland Security and the
Executive Office for Immigration Review
(A204-796-985)
Immigration Judge: Kuyomars Golparvar
_____

Argued on April 26, 2022

Before: HARDIMAN, NYGAARD, and FISHER, *Circuit Judges*.

(Filed: June 30, 2022)

Stephen F. Raiola [Argued]
Peter St. Tienne Wolff

Pietragallo Gordon Alfano Bosick & Raspanti
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
        *Counsel for Petitioner*

Brian M. Boynton
John S. Hogan
Todd J. Cochran
Craig A. Newell, Jr. [Argued]
U.S. Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge.*

Alexis Fernando Barradas-Jacome filed this petition for review challenging his expedited removal by the Department of Homeland Security (DHS) based on his Pennsylvania conviction for receiving stolen property. The petition raises two issues of precedential import, one jurisdictional and one substantive. For the reasons that follow, we hold that we have jurisdiction to review Barradas-Jacome's legal argument in the first instance because DHS's expedited removal procedures do not allow aliens to challenge the legal basis for their removal.

2

We also hold that Barradas-Jacome's state conviction is an aggravated felony under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(43)(G). So we will deny his petition for review.[1]

I

A native and citizen of Mexico, Barradas-Jacome entered the United States on a tourist visa in 2004 when he was six years old. He received approval to remain under the Deferred Action for Childhood Arrivals program in October 2013, but failed to renew his DACA status after it expired. In October 2019, Barradas-Jacome pleaded guilty to receiving stolen property, in violation of 18 Pa. Cons. Stat. § 3925(a),[2] and was sentenced to 12–24 months' imprisonment.

In January 2020, DHS initiated expedited removal proceedings against Barradas-Jacome by serving him with a Notice of Intent to Issue a Final Administrative Removal Order (FARO). The Notice of Intent—one side of DHS Form I-851—informed Barradas-Jacome that he was charged with being deportable under the INA as an alien "convicted of an aggravated felony" because he had been convicted of receiving

---

[1] The Court appointed Stephen F. Raiola of Pietragallo Gordon Alfano Bosick & Raspanti to represent Barradas-Jacome pro bono in this appeal. Mr. Raiola has ably discharged his responsibilities.

[2] Barradas-Jacome also pleaded guilty to (1) resisting arrest, 18 Pa. Cons. Stat. § 5104; (2) use or possession of drug paraphernalia, 35 P.S. § 780-113(a)(32); and (3) carrying a firearm without a license, 18 Pa. Cons. Stat. § 6106(a)(1).

stolen property. App. 30 (citing 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1101(a)(43)(G)). The Notice of Intent also advised Barradas-Jacome that he would be removed under expedited procedures, "without a hearing before an Immigration Judge," and indicated that he had ten days to "respond to the [removal] charges in writing to the [DHS] address provided on the other side of this form."[3] App. 30.

The same day, Barradas-Jacome responded by filling out the reverse side of Form I-851 as instructed. The form's response side includes a series of checkboxes where an alien can state whether he contests removal and, if so, the nature of his challenge. Barradas-Jacome checked two boxes, indicating (1) "I Wish to Contest and/or Request Withholding of Removal," and (2) "I request withholding or deferral of removal to Mexico."

---

[3] The form further instructs: "In your response you may: request, for good cause, an extension of time; rebut the charges stated above (with supporting evidence); request an opportunity to review the government's evidence; admit deportability; designate the country to which you choose to be removed in the event that a final order of removal is issued . . . ; and/or, if you fear persecution . . . or, if you fear torture in any specific country or countries, you may request withholding of removal under [the INA or the Convention Against Torture]." App. 30.

4

☒ **I Wish to Contest and/or to Request Withholding of Removal**

☐ I contest my deportability because: *(Attach any supporting documentation)*

    ☐ I am a citizen or national of the United States.
    ☐ I am a lawful permanent resident of the United States.
    ☐ I was not convicted of the criminal offense described in allegation number 6 above.
    ☐ I am attaching documents in support of my rebuttal and request for further review.

☒ I request withholding or deferral of removal to _____ Mexico _____ [Name of Country or Countries]:

    ☐ Under section 241(b)(3) of the Act, 8 U.S.C. 1231(b)(3), because I fear persecution on account of my race, religion, nationality, membership in a particular social group, or political opinion in that country or those countries.
    ☐ Under the Convention Against Torture, because I fear torture in that country or those countries.

X _____    Alexis Barradas-Jacome    1/29/20
    (Signature of Respondent)      (Printed Name of Respondent)      (Date and Time)

☐ **I Do Not Wish to Contest and/or to Request Withholding of Removal**

☐ I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to

_____

☐ I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right.

_____    _____    _____
(Signature of Respondent)      (Printed Name of Respondent)      (Date and Time)

_____    _____    _____
(Signature of Witness)      (Printed Name of Witness)      (Date and Time)

**RETURN THIS FORM TO:**
**Department Of Homeland Security**

App. 31. On his Form I-851 response, Barradas-Jacome did not indicate that he believed his Pennsylvania receiving stolen property conviction is not an "aggravated felony."

After reviewing Barradas-Jacome's I-851 response and administrative record, DHS issued a FARO in February 2020. *See* 8 U.S.C. § 1228(b) (expedited deportation for "aliens who are not permanent residents" and who are convicted of an aggravated felony). Because Barradas-Jacome requested withholding of removal, he obtained a reasonable fear interview with an asylum officer who concluded that Barradas-Jacome had not established a reasonable fear of persecution or torture. Barradas-Jacome appealed that determination to an IJ,

who held a hearing and concurred in the asylum officer's negative reasonable fear determination. The IJ's final order specified that no administrative appeal was available, but that Barradas-Jacome could seek Third Circuit review within 30 days. *See* 8 U.S.C. § 1252; 8 C.F.R. § 1208.31(g)(1). Barradas-Jacome timely petitioned this Court.[4]

## II

Under the INA, our jurisdiction to review final orders of removal is circumscribed. 8 U.S.C. § 1252(a)(1). We lack authority to review "any final order of removal against an alien who is removable by reason of having committed" an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). For those removal orders, our jurisdiction is limited to "constitutional claims or questions of law" raised in the petition. 8 U.S.C. § 1252(a)(2)(D); *Quinteros v. Att'y Gen.*, 945 F.3d 772, 780 (3d Cir. 2019). And even then, we may review a removal order only if "the alien has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1).

---

[4] Barradas-Jacome simultaneously attempted to appeal the IJ's order to the Board of Immigration Appeals (BIA), specifically challenging DHS's "improper aggravated felony holding." Supp App. 3. The BIA promptly rejected his appeal, noting that it "does not have the authority to review reasonable fear determinations made by an Immigration Judge." Supp. App. 5 (citing 8 C.F.R. § 1208.31(g)(1)). The BIA did not acknowledge Barradas-Jacome's challenge to DHS's aggravated felony determination. Barradas-Jacome moved for reconsideration, raising again his "challenge to his status as an aggravated felon." Supp. App. 7–8. The BIA again rejected that appeal for lack of authority.

When Barradas-Jacome responded to DHS's Notice of Intent, he did not contest the agency's determination that his Pennsylvania conviction for receiving stolen property is an aggravated felony. Yet Barradas-Jacome argues that he exhausted his administrative remedies because DHS's expedited removal procedures allow him to contest only the factual basis of his removal, not to raise legal arguments (*e.g.*, challenging the classification of his conviction as an aggravated felony). Barradas-Jacome thus claims that we have jurisdiction to consider his challenge in the first instance on his petition for review.

"The question of whether DHS's expedited removal procedures provide an alien with the opportunity to challenge the legal basis of his or her removal—and thus whether we have jurisdiction to hear such a challenge when a petitioner fails to raise it before DHS—is one that has split our sister circuits." *Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015); *compare id.* (jurisdiction lies), *and Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187–88 (5th Cir. 2013) (per curiam) (same), *with Malu v. Att'y Gen.*, 764 F.3d 1282, 1289 (11th Cir. 2014) (no jurisdiction).[5] We now join the Fourth and Fifth Circuits and hold that DHS has not made legal challenges available to aliens during expedited removal proceedings. So the INA's exhaustion requirement does not deprive us of

---

[5] As the Fourth Circuit observed in *Etienne*, the Seventh Circuit has "arguably come out on both sides of the issue." 813 F.3d at 138 n.2; *compare Eke v. Mukasey*, 512 F.3d 372, 377–78 (7th Cir. 2008) (jurisdiction lies), *with Fonseca–Sanchez v. Gonzales*, 484 F.3d 439, 444–45 (7th Cir. 2007) (no jurisdiction).

jurisdiction to consider Barradas-Jacome's legal challenge for the first time on his petition for review.

A

Before determining our jurisdiction, we first describe DHS's expedited removal process. The INA declares that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Before an alien can be deported on this ground, he generally must be afforded a hearing before an IJ, where he may contest the factual or legal basis of his removability. *See* 8 U.S.C. §§ 1229, 1229a; 8 C.F.R. § 1240.10(c). But for aliens like Barradas-Jacome who have not been lawfully admitted to the United States for permanent residence, the INA authorizes an expedited removal process without a hearing before an IJ. *See* 8 U.S.C. § 1228(b); 8 C.F.R. § 238.1(a). A DHS officer—who need not be an attorney—presides over this expedited process. *See id.*

DHS initiates expedited removal proceedings by serving an alien with a Form I-851 Notice of Intent. *See id.* § 238.1(b)(1), (b)(2)(i). The Notice of Intent must (1) notify the alien of the "allegations of fact and conclusions of law" supporting DHS's preliminary determination that the alien is removable; (2) inform the alien of DHS's "intent to issue a . . . Final Administrative Removal Order, without a hearing before an [IJ]"; and (3) advise the alien, among other things, that he "may rebut the charges within 10 calendar days after service." *Id.* § 238.1(b)(2)(i). The Notice of Intent sent to Barradas-Jacome conforms to these regulations.

Once DHS has served an alien with the Notice of Intent, the alien must choose whether to respond. Form I–851 offers a

8

series of checkboxes on the back of the form. Barradas-Jacome's completed Form I–851, replicated above, shows the range of possible responses. App. 31.

If the alien chooses to respond, he first decides whether to contest deportability. To contest deportability, he must check the box that states, "I contest my deportability because: *(Attach any supporting documentation)*." *Id.* Indented beneath that checkbox are four more checkboxes, only three of which logically complete the statement. And those options present the following three factual challenges to the basis of expedited removal: (1) "I am a citizen or national of the United States"; (2) "I am a lawful permanent resident of the United States"; and (3) "I was not convicted of the criminal offense described in allegation number 6 above."[6] *Id.* The fourth checkbox, found directly below and aligned with the three factual challenges, reads "I am attaching documents in support of my rebuttal and request for further review." *Id.* Critically for purposes of this case, the I-851 response form offers no specific checkbox for an alien who wishes to challenge the legal basis of his removal.

If the alien contests deportability, the DHS officer must determine whether his deportability is nonetheless "established by clear, convincing, and unequivocal evidence in the record of proceeding." 8 C.F.R. § 238.1(d)(2)(i). If so, the officer "shall issue . . . a Final Administrative Removal Order." *Id.*

---

[6] The Notice of Intent includes six "allegations" that undergird DHS's expedited removal determination. App. 30. Allegation "number 6" provides the date, court, and statute of conviction—in this case, 18 Pa. Cons. Stat. § 3925(a)—as well as the term of imprisonment imposed. App. 30–31. So the "criminal offense described in allegation number 6" is not an INA charge to be contested.

9

But if the "officer finds that the record of proceeding, including the alien's timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings," that officer may either (1) "obtain additional evidence from any source, including the alien," or (2) initiate full removal proceedings before an IJ. *Id.* § 238.1(d)(2)(ii)(A). If the officer "finds, after considering all additional evidence, that deportability is established by clear, convincing, and unequivocal evidence," the officer "shall issue . . . a Final Administrative Removal Order." *Id.* § 238.1(d)(2)(ii)(B). But if the officer "finds that the alien is not amenable to [expedited] removal," the officer "shall terminate the expedited proceedings . . . and shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an [IJ]." *Id.* § 238.1(d)(2)(iii).

B

Having explained the essential attributes of the expedited removal process, we turn to the question of our jurisdiction over Barradas-Jacome's petition. The parties dispute how to interpret DHS regulations governing expedited removal procedures, specifically 8 C.F.R. § 238.1(c)–(d). The Government makes two points. First, the regulations "contain no limiting language that would bar the alien from raising—or DHS considering—legal challenges to the charge of removability." Gov't Br. 15–16 (citing 8 C.F.R. § 238.1(c)). Second, the regulations authorize a DHS officer presiding over expedited removal proceedings to consider an alien's legal challenge to removability. So the Government argues that aliens must raise legal challenges or forfeit them for failing to exhaust administrative remedies.

Barradas-Jacome disagrees on both fronts. First, the "plain text of 8 CFR § 238.1(c) . . . permits the alien to rebut the *allegations supporting the charge* but not the *legal charge* itself." Barradas-Jacome Br. 21. Second, the regulations do not authorize the DHS officer to consider legal challenges; they merely recognize that the officer may be unable to establish the *factual basis* for an alien's removability by "clear, convincing, unequivocal evidence," leaving the alien "not amenable" to expedited removal (but potentially amenable to ordinary removal proceedings before an IJ). Reply Br. 5–6 (citing 8 C.F.R. § 238.1(d)(2)).

The Fourth and Fifth Circuits agree with Barradas-Jacome. In *Valdiviez-Hernandez*, the Fifth Circuit held that "the relevant statutes and corresponding regulations . . . did not provide [the alien] with an avenue to challenge the legal conclusion that he does not meet the definition of an alien subject to expedited removal." 739 F.3d at 187. While acknowledging that the Notice of Intent "included conclusions of law," the court reasoned that "the response process is geared toward resolving only issues of fact." *Id.* (citing 8 C.F.R. § 238.1(d)(2)). In *Etienne*, the Fourth Circuit "conclude[d] that the Fifth Circuit's approach . . . is more consistent with the language and structure of the expedited removal regulations . . . [and] Form I-851." 813 F.3d at 141.

The Eleventh Circuit agrees with the Government's approach. In *Malu*, that court underscored that the relevant regulations require the Notice of Intent to "include both 'allegations of fact and conclusions of law' that the alien may rebut." 764 F.3d at 1288 (quoting 8 C.F.R. § 238.1(b)(2)(i)). The court read 8 C.F.R. § 238.1(d)(2)(iii) to allow "an officer [to] transfer removal proceedings to an immigration judge if the alien objects to the notice of removal on the ground that she

11

is 'not amenable' to the expedited removal proceedings." *Id.* ("Whether an alien is amenable to expedited removal proceedings could involve either an issue of law or fact."). Because "it would be nonsensical to limit the alien's rebuttal to allegations of fact, but save for later any rebuttal to conclusions of law," the court held that "an alien must exhaust all administrative remedies by rebutting the charges—including the conclusion of law that she is an aggravated felon—before the Department." *Id.* We find the Fourth and Fifth Circuits' reasoning more persuasive.

1

When read in context with the INA and relevant regulations, the expedited removal regulations strongly suggest that only factual challenges to an alien's removability may be raised in expedited proceedings. The Government is correct that DHS regulations require the Notice of Intent to "include allegations of fact and conclusions of law." 8 C.F.R. § 238.1(b)(2)(i). But the regulations on an *alien's response* to the Notice of Intent allow for "rebutting the allegations supporting the charge," not—at least, not explicitly—any conclusions of law, *id.* § 238.1(c)(1). The contrast between what is required of the Government and what is expected in response from the alien is telling. Had DHS wanted to adjudicate legal issues at this stage, it could have easily required aliens to do so.

The regulations governing the presiding DHS officer's determination also suggest that the proceedings implicate factual, not legal, challenges. *See Valdiviez-Hernandez*, 739 F.3d at 187 (citing 8 C.F.R. § 238.1(d)(2)). If the alien "raises a genuine issue of material fact," the officer may gather additional evidence. 8 C.F.R. § 238.1(d)(2)(ii)(A). If the new

12

evidence enables the officer to conclude deportability by "clear, convincing, and unequivocal evidence," he must then issue a Final Administrative Removal Order. *Id.* § 238.1(d)(2)(ii)(B). The regulations provide the DHS officer no guidance about legal issues. Once again, that silence is telling.

Nor are expedited removal proceedings structured to handle legal challenges. The DHS officer need not have any legal training, much less be a lawyer. *See* 8 C.F.R. § 238.1(a). The Government counters that the officer's ability to transfer proceedings to an IJ cures any structural deficiency in his ability to consider legal challenges. *See id.* § 238.1(d)(2)(iii) (requiring the DHS officer to transfer proceedings to an IJ "where appropriate"); *Malu*, 764 F.3d at 1288. We disagree. The most reasonable reading, in view of the broader regulatory scheme, is that transfers to IJs should occur when a "genuine issue of material fact" prevents the DHS officer from finding deportability by "clear, convincing, and *unequivocal* evidence." 8 C.F.R. § 238.1(d)(2)(ii) (emphasis added). Though the deciding DHS officer could not "unequivocally" find that the alien is removable, *id.*, an IJ might still be able to conclude deportability, since he is not held to the same high evidentiary standard as the DHS officer. When an IJ orders removal after holding a hearing, the evidence must be "clear and convincing," but it need not be "unequivocal." *Compare id.* § 238.1(d)(2)(i), (ii)(B), *with* 8 U.S.C. § 1229a(c)(3)(A).

2

The regulations' silence about legal challenges also suggests that such challenges are not contemplated in expedited removal proceedings. DHS practice—*i.e.*, the form

13

it uses to facilitate expedited removal proceedings—implies the same.

DHS Form I-851, which details the steps that aliens in expedited removal proceedings may take to respond to allegations against them, offers no clear opportunity to raise a legal challenge. The Notice of Intent side of Form I-851 points toward "the other side of this form," where it indicates that an alien has ten days to "respond to the [removal] charges in writing." App. 30. Despite noting that an alien "may . . . rebut the charges stated above (with supporting evidence)," the form's "other side" limits his response. App. 30. It contains several checkboxes for an alien to lodge factual challenges to his removal, but offers no checkbox for lodging any specific legal challenges, a legal challenge in general, or other unenumerated challenges.

The Government relies on Form I-851's fourth checkbox, which states: "I am attaching documents in support of my rebuttal and request for further review." App. 31. We are hard-pressed to think of a more opaque way to put an alien on notice that DHS intends him to raise a legal challenge in response to the Notice of Intent. Read plainly, that checkbox does not create a procedure for aliens to raise any other challenges—including legal challenges—to their removal charges. The phrase "my rebuttal" appears to refer directly to the three factual challenges listed immediately above that checkbox. *Id.* Given the language and structure of Form I-851, we cannot say that DHS's expedited removal procedures offer an alien the opportunity to challenge the legal basis of his removal; indeed, Form I-851 "expressly prompts aliens to raise only factual challenges to removal." *Etienne*, 813 F.3d at 142. When read alongside DHS regulations governing expedited removal proceedings, we hold that aliens convicted of an

14

aggravated felony do not have "an avenue to challenge the legal conclusion" that they are subject to expedited removal. *Valdiviez-Hernandez*, 739 F.3d at 187; *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("[E]xhaustion of administrative remedies . . . 'means using all steps that the agency holds out.'" (citation omitted)).[7]

C

The Government disagrees with this conclusion. It emphasizes that the Notice of Intent includes "not just allegations, but also a 'charge,' which appears [on Form I-851] as the legal provision under which DHS believes [an alien] is removable." Gov't Br. 14–15; *see* 8 C.F.R. § 238.1(b)(2)(i). In this case, the "charge" stated that Barradas-Jacome was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(G). App. 30. And the Notice of Intent informed Barradas-Jacome that he could (1) "respond to the above charge[] in writing" and (2) "rebut the charge[] stated above (with supporting evidence)." App. 30; *see* 8 C.F.R. § 238.1(b)(2)(i). The Government thus argues: "the [Notice of

---

[7] This discussion should make plain the limits of our holding. Nothing in our opinion prevents DHS from revising the I-851 response form to clarify that DHS wishes to require aliens to raise legal challenges in expedited removal proceedings. Such a revision would provide clear notice to aliens of their right to raise legal arguments in a manner that the present response form does not. The opportunity to raise a legal challenge would then become one of the "steps that the agency holds out," an administrative remedy that must be exhausted. *Woodford*, 548 U.S. at 90; *cf. Etienne*, 813 F.3d at 142.

Intent] provided Barradas with the ability to rebut the legal basis of the removal charge, and the regulations provided the deciding officer with a mechanism for considering and addressing such a challenge." Gov't Br. 15; *see* 8 C.F.R. § 238.1(d)(2)(iii) (DHS officer may conclude that the alien is "not amenable" to expedited removal and transfer to regular removal proceedings).

But were legal challenges *available* to Barradas-Jacome during expedited removal proceedings? It is true that neither the regulations nor Form I-851 expressly precludes Barradas-Jacome from raising, or DHS from considering, a legal challenge to his charge of removability. But that does not mean a remedy was available. We have previously expounded upon remedies available in 8 U.S.C. § 1252(d)(1). An administrative remedy is available as of right if "(1) the alien's claim was within the jurisdiction of the [agency] to consider and implicated agency expertise, and (2) the agency was capable of granting the remedy sought by the alien." *Bonhometre v. Gonzales*, 414 F.3d 442, 447 (3d Cir. 2005) (citations omitted); *see also Nkomo v. Att'y Gen.*, 986 F.3d 268, 272 (3d Cir. 2021) (describing our "liberal" exhaustion policy: "so long as an immigration petitioner makes some effort, however insufficient, to place the [agency] on notice of a straightforward issue being raised on appeal, he meets the exhaustion requirement" (cleaned up)).

Since we decided *Bonhometre*, the Supreme Court has considered the Prison Litigation Reform Act's exhaustion provision (42 U.S.C. § 1997e(a)). In *Ross v. Blake*, 578 U.S. 632 (2016), the Court held that an administrative remedy is "unavailable" when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief," *id.* at 643; or (2) "an administrative scheme [is] so opaque that

16

it becomes, practically speaking, incapable of use," *id.* The INA's exhaustion provision seems even more favorable to petitioners, as it requires exhaustion of remedies "available . . . as of right," not just "available" remedies, as in the PLRA. *Compare* 8 U.S.C. § 1252(d)(1), *with* 42 U.S.C. § 1997e(a).

Under this definition, it is hard to see how legal challenges made by aliens in expedited removal proceedings could reasonably be considered anything but a "dead end." In many appellate cases involving legal challenges to DHS "aggravated felony" determinations, aliens in expedited proceedings consistently received Final Administrative Removal Orders—no matter if, or how, they responded on Form I-851. *See, e.g.*, *Quinteros*, 945 F.3d at 781 (although alien checked box indicating "I Wish to Contest and/or to Request Withholding of Removal," BIA concluded alien *could not challenge whether conviction was aggravated felony in expedited proceedings*); *Victoria-Faustino v. Sessions*, 865 F.3d 869, 871–72 (7th Cir. 2017) (alien checked box indicating desire to "Contest and/or Request Withholding of Removal"); *Etienne*, 813 F.3d at 137–38 (alien checked boxes indicating "I Wish to Contest," "I contest my deportability because," and even "I am attaching documents in support of my rebuttal and request further review"); *Malu*, 764 F.3d at 1287 (did not complete I-851 response form); *Valdiviez-Hernandez*, 739 F.3d at 186 (did not complete I-851 response form); *Escoto-Castillo v. Napolitano*, 658 F.3d 864, 865 (8th Cir. 2011) (checked box indicating admitted charges and removable); *Graham v. Mukasey*, 519 F.3d 546, 548–49 (6th Cir. 2008) (alien did not complete I-851 response form, but attorney called DHS indicating that he would contest "crime of violence" classification); *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 378–79 (5th Cir. 2005). In *Flores-Ledezma*, "counsel

17

[even] sent a letter to the INS formally contesting the charges" against his alien client, requesting that he "be placed in 'general' removal proceedings under . . . 8 U.S.C. § 1229a." 415 F.3d at 378. Less than two weeks later, before counsel received any response, the Final Administrative Removal Order issued. *Id.* at 378–79.

The Government's argument—that nothing bars Barradas-Jacome from challenging the removal charge against him or prevents DHS from considering it—is difficult to square with the empirical reality of these cases.[8] Finding legal challenges unavailable on his I-851 response form, Barradas-Jacome tried to challenge DHS's aggravated felony determination before the BIA, both during the appeal of his withholding of removal decision and upon his motion for reconsideration. The BIA rejected each appeal for lack of authority. If, among the legion of expedited removal cases, DHS can't cite a single favorable response to a legal challenge by an alien in expedited removal proceedings, how can we conclude that "the agency was capable of granting the remedy sought by the alien"? *Bonhometre*, 414 F.3d at 447; *cf. Ross*, 578 U.S. at 642 ("[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'"

---

[8] At oral argument, the Government pointed to *Bedolla-Zarate v. Sessions*, 892 F.3d 1137 (10th Cir. 2018), in support of its assertion that aliens in expedited removal proceedings can raise legal challenges before DHS. But *Bedolla-Zarate* did not discuss precisely when, or exactly how, the alien challenged his aggravated felony conviction, *see id.* at 1139; and the Tenth Circuit simply asserted its jurisdiction over the FARO, without explaining the basis of its review, *see id.* at 1138.

(cleaned up)). Because we find that legal challenges are unavailable to aliens during expedited removal proceedings, we conclude that Barradas-Jacome did not fail to exhaust his administrative remedies before DHS. We therefore have jurisdiction to consider his challenge to DHS's aggravated felony determination.

## III

We now address whether Barradas-Jacome is deportable because of his criminal conviction. Specifically, Barradas-Jacome challenges DHS's determination that his state conviction for receiving stolen property is an aggravated felony under the INA. *See* 18 Pa. Cons. Stat. § 3925(a); 8 U.S.C. § 1227(a)(2)(A)(iii). We review this question of law de novo. *See Mateo v. Att'y Gen.*, 870 F.3d 228, 231 (3d Cir. 2017). We apply the categorical approach to determine whether Barradas-Jacome's statute of conviction "fits" the generic "receipt of stolen property" definition contemplated under 8 U.S.C. § 1101(a)(43)(G). *Lewin v. Att'y Gen.*, 885 F.3d 165, 167 (3d Cir. 2018) (citations omitted). Barradas-Jacome's "actual conduct is irrelevant to the inquiry," and we must "presume that the conviction rested upon nothing more than the least of the acts criminalized under the state statute." *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015) (cleaned up). But "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (citation omitted).

Pennsylvania's statutory definition of receiving stolen property mirrors the Model Penal Code: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. Cons. Stat. § 3925(a); *see* M.P.C. § 223.6.

The INA includes within its defined list of aggravated felonies "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). The "INA itself does not define 'theft' or 'receipt of stolen property,'" so we use the generic definition: "the 'taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" *Lewin*, 885 F.3d at 168 (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007)). Under the INA, "'receipt of stolen property' is not merely a subset of 'theft' as that term is used in [8 U.S.C. § 1101(a)(43)(G)], because each can be considered to be a distinct and separate offense." *In re Cardiel-Guerrero*, 25 I. & N. Dec. 12, 14 (2009) ("[A] thief may not receive property from himself."); *see also In re Enrique Alday-Dominguez, Respondent*, 27 I. & N. Dec. 48, 49–50 (2017) (reaffirming *In re Cardiel-Guerrero*).

Barradas-Jacome was convicted of receiving stolen property in violation of 18 Pa. Cons. Stat. § 3925(a). Because the elements of that crime fit the generic definition of receiving stolen property under 8 U.S.C. § 1101(a)(43)(G), it qualifies as an aggravated felony under the INA.

A

Barradas-Jacome argues that the mens rea element of 18 Pa. Cons. Stat. § 3925(a) is categorically insufficient to constitute an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). The generic definition of "theft offense"—the relevant comparator for the Pennsylvania statute—requires actual knowledge or belief that the property was stolen. *Lewin*, 885 F.3d at 168–69. But according to Barradas-Jacome, the Pennsylvania offense is broader because "trial courts in Pennsylvania have both accepted guilty pleas and sustained convictions for . . . receipt of stolen property based only on a mens rea of 'reason to believe' or 'should have known.'" Barradas-Jacome Br. 32.

We recently confronted an identical claim about New Jersey's receiving stolen property statute in *Lewin* and concluded that "the mens rea element of New Jersey's receiving stolen property statute is categorically sufficient to constitute an aggravated felony under § 1101(a)(43)(G)." 885 F.3d at 169–70. The statutory mens rea requirement for receiving stolen property is nearly identical in New Jersey and Pennsylvania, since both definitions are patterned on the Model Penal Code. *Compare* 18 Pa. Cons. Stat. § 3925(a) ("knowing that it has been stolen, or believing that it has probably been stolen"), *with* N.J. Stat. Ann. § 2C:20-7(a) ("knowing that it has been stolen, or believing that it is probably stolen").

We also considered an analogous claim about § 3925(a) in *De Leon-Reynoso v. Ashcroft*, 293 F.3d 633, 636–37 (3d Cir. 2002). There, an alien challenged his deportability for committing a crime of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). Analyzing the statute's language in light of

two Pennsylvania Superior Court decisions, we concluded that § 3925(a) "is purely subjective." *Id.* at 636–37. In doing so, we rejected the argument that "[§ 3925(a)] has been interpreted by the Pennsylvania courts as having an objective element." *Id.* at 636–37.

Despite § 3925(a)'s clear text, Barradas-Jacome claims that Pennsylvania courts routinely apply a lower mens rea threshold for receiving stolen property. *See* Barradas-Jacome Br. 29–33 (citing *Commonwealth v. Morrissey*, 654 A.2d 1049 (Pa. 1995); and *Commonwealth v. Scudder*, 416 A.2d 1003 (Pa. 1980)). Barradas-Jacome has a point to the extent that the Pennsylvania Supreme Court opinions in *Morrissey* and *Scudder* use outdated, objective mens rea language.[9] *See Morrissey*, 654 A.2d at 1054 ("To prove the crime of receiving stolen property, the Commonwealth must establish . . . that the possessor knew, or had reason to know, that the item was stolen."); *Scudder*, 416 A.2d at 1006 ("[W]e must look to determine whether . . . appellant knew or should have known that the van was stolen."). But despite the court's loose

_____

[9] The text of § 3925(a) was amended in 1972 when Pennsylvania enacted its new Crimes Code. *See* Act of Dec. 6, 1972, No. 334, 1972 Pa. Laws 1482, 1538–39. A prior version of the statute required that individuals "knew or *had reason to know* the item was stolen." *Commonwealth v. Peluso*, 393 A.2d 344, 347 (Pa. 1978) (emphasis added). This earlier statutory language led the Pennsylvania Superior Court to enunciate an objective mens rea standard that asked whether "a reasonably prudent [person]" would suspect the property was stolen. *See, e.g.*, *Commonwealth v. Gazal*, 166 A.2d 314, 316 (Pa. Super. Ct. 1960); *Commonwealth v. Frankina*, 39 A.2d 628, 630 (Pa. Super. Ct. 1944).

22

language, neither decision involves a defendant who was prosecuted, or convicted, for receiving stolen property under an objective, reasonable-person standard, rather than the subjective standard defined by Section 3925(a). In fact, *Scudder* cites another Pennsylvania Supreme Court decision— from *before* the statute's amendment in 1972—to clarify the subjective nature of Section 3925(a)'s mens rea requirement. *Id.* at 1005 (citing *Commonwealth v. Davis*, 280 A.2d 119 (Pa. 1971)) (Commonwealth must establish that defendant "either 'intentionally received' or *'knew' that the property had been stolen . . .* to sustain the charges" for receiving stolen property (emphasis added)). The Pennsylvania Supreme Court has also affirmed at least one Pennsylvania Superior Court case that correctly stated the subjective, post-1972 mens rea requirement for § 3925(a). *See Commonwealth v. Stafford*, 623 A.2d 838, 840 (Pa Super. Ct. 1993), *aff'd*, 652 A.2d 297 (Pa. 1995) (per curiam); *see also Commonwealth v. Matthews*, 632 A.2d 570, 572 (Pa. Super. Ct. 1993) (citing *Stafford* for § 3925(a)'s mens rea requirement).[10]

---

[10] Barradas-Jacome highlights some confusion in the Pennsylvania lower courts over application of § 3925(a)'s mens rea standard. Some of these lower court decisions apply § 3925(a)'s subjective mens rea requirement as written in the statute and so do not support his argument, *see, e.g.*, *Commonwealth v. Robbins*, 647 A.2d 555, 557–58 (Pa. Super. Ct. 1994); others cite outdated mens rea language, even though the court concludes that defendants actually knew they were receiving stolen property, *see, e.g.*, *Commonwealth v. Foreman*, 797 A.2d 1005, 1012–13 (Pa. Super. Ct. 2002); *Commonwealth v. Grabowski*, 452 A.2d 827, 830 (Pa. Super. Ct. 1982); still others incorporate outdated mens rea language without clarifying whether the evidence would support

23

We are bound by the Pennsylvania Supreme Court's interpretation of current state law. *See Johnson v. United States*, 559 U.S. 133, 138 (2010); *Johnson v. Fankell*, 520 U.S 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."). We therefore hold that the mens rea element of Pennsylvania's receiving stolen property statute, 18 Pa. Cons. Stat. § 3925(a), is not broader than the generic offense contemplated by 8 U.S.C. § 1101(a)(43)(G).

B

Barradas-Jacome makes two more arguments challenging DHS's aggravated felony determination. Neither has merit.

First, Barradas-Jacome claims his conviction for receipt of stolen property cannot categorically qualify as an aggravated felony because Pennsylvania consolidates all theft offenses under 18 Pa. Cons. Stat. § 3902, and those theft offenses criminalize more than 8 U.S.C. § 1101(a)(43)(G). His argument relies on an erroneous belief that Pennsylvania's generic definition of "theft" applies equally to "receipt of stolen property" offenses, based on the text of § 3902. In fact, § 3902 does not permit the Commonwealth to prosecute an individual for receiving stolen property under § 3925(a) by proving the elements of other theft offenses. Rather, it permits

---

conviction under § 3925(a)'s subjective statutory standard, *see, e.g.*, *Crespo v. Hughes*, 167 A.3d 168, 188 (Pa. Super. Ct. 2017); *Commonwealth v. Parker*, 847 A.2d 745, 752 (Pa. Super. Ct. 2004).

24

the Commonwealth to present evidence supporting theft "committed in any manner . . . under this chapter," even if the initial complaint or indictment specified a different theft crime. 18 Pa. Cons. Stat. § 3902. It does not alter the elements of each individual theft offense under Pennsylvania law. *See, e.g.*, *Commonwealth v. Peduzzi*, 488 A.2d 29, 31 (Pa. Super. Ct. 1985).

Second, Barradas-Jacome argues that, unlike the generic theft offense, § 3925(a) "does not require there to be a taking or possession of property without consent," Reply Br. 21, and "does not require the specific intent to deprive the owner of the rights or benefits of ownership," Barradas-Jacome Br. 38. But the Pennsylvania Supreme Court has affirmed that § 3925(a) requires the Commonwealth to "establish that the goods in question are *actually stolen* in order to sustain a conviction for receiving stolen property." *Stafford*, 623 A.2d at 840, *aff'd*, 652 A.2d 297 (Pa. 1995) (per curiam) (emphasis added). Likewise, Pennsylvania Superior Court cases have consistently held that "intent to deprive permanently" is an element of receiving stolen property. *Commonwealth v. Gomez*, 224 A.3d 1095, 1099 (Pa. Super. Ct. 2019) (quoting *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super Ct. 2015)). So Barradas-Jacome's arguments prove more of "a theoretical possibility" than "a realistic probability" that Pennsylvania would apply § 3925(a) to conduct falling outside the generic definition of receiving stolen property. *Moncrieffe*, 569 U.S. at 191.

C

Finally, Barradas-Jacome argues for the first time in his petition for review that DHS's expedited removal regulations and Form I-851 "unconstitutionally deprived him of 'the

25

opportunity to be heard at a meaningful time and in a meaningful manner' in violation of the INA and the constitutional guarantee of due process." Barradas-Jacome Br. 44 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). He bases his due process claim on the same arguments made about exhaustion—that DHS did not provide him a reasonable opportunity to rebut its aggravated felony determination during his expedited removal proceedings.

We have recognized that aliens subject to removal have a Fifth Amendment right to due process in their removal proceedings. *See Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 213 (3d Cir. 2017). To prevail on his due process claim, Barradas-Jacome has to "show (1) that he was prevented from reasonably presenting his case, and (2) that substantial prejudice resulted." *Id.* (cleaned up). But he "must first state a liberty or property interest" to be protected. *Darby v. Att'y Gen.*, 1 F.4th 151, 165 (3d Cir. 2021). Here, there is no legally protected interest. Barradas-Jacome did not contest that he was present without admission, or that he failed to present a claim for protection; and DHS properly determined that he was convicted of an aggravated felony. So the sole advantage he could hope to receive from removal proceedings before an IJ is the possibility of obtaining discretionary relief. But to the extent his aggravated felony conviction does not categorically bar discretionary relief, Barradas-Jacome lacks any legally protected interest in that relief. *See id.* ("[A]liens do not have a liberty or property interest in discretionary relief."); *see also* 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i) (aggravated felony bars asylum); *id.* § 1229b(b)(1)(C) (aggravated felony bars cancellation of removal).

Moreover, to prevail on a procedural due process challenge, an alien must make an initial showing of substantial

26

prejudice by the alleged procedural error. *Bonhometre*, 414 F.3d at 448. But here, there is no reason to conclude that Barradas-Jacome could establish prejudice: he is not a lawful permanent resident, and he was convicted of an aggravated felony. Even if we were to find a due process violation, Barradas-Jacome would still be removable under 8 U.S.C. § 1228(b).

\* \* \*

For the reasons stated, we will deny Barradas-Jacome's petition for review.